R. O. WRIGHT and EVILINA WRIGHT V. DONALD RODERICK OSBORN and NORWICH PHARMACAL COMPANY, a Corporation, Appellants.— No. 40079.—201 S. W. (2d) 935.

Division One, April 21, 1947.

Rehearing Denied, May 12, 1947.

*Richard H. Beeson* and *David P. Dabbs* for appellants.

*Hook & Thòmas, Inghram D. Hook* and *Harry L. Thomas* for respondents.

CONKLING, J.—Respondents, plaintiffs below, recovered judgment in the Circuit Court of Jackson County for $8,695.00 for the death of their minor son, Lawrence Wright, 8 years of age, which resulted instantly when he was struck by an automobile on June 11, 1945. The automobile being operated north on Highway 169 by appellant Osborn, then 72 years of age, for and upon the business of his employer, the appellant Norwich Pharmacal Company. Their motion for new trial being overruled appellants lodged their appeal here.

Respondents pleaded primary negligence in that the automobile was operated at an excessive rate of speed and also pleaded humanitarian negligence in that appellants, after peril arose, could have avoided striking and killing their son by slackening the speed, or turning aside or giving a warning. Defendants' answer pleaded contributory negligence of the boy in that he suddenly ran from an obscured position east on the concrete highway onto the highway in front of appellants' automobile. Upon the submission of the case primary negligence was abandoned and the submission instruction was upon the humanitarian allegation in the above alternatives.

The contention of appellants in this court that the facts of record, and proper inferences therefrom, did not make a case which could have been submitted to the jury requires a full statement of the facts. It is axiomatic that under these circumstances we state and consider the instant facts and the reasonable inferences therefrom in the light most favorable to the verdict below, and give respondents the benefit of every favorable inference which the evidence tends to support.

Osborn, on the day in question, was driving alone in his 1941 Ford sedan north on the east half of Highway 169 just north of Smithville, Missouri. The day was clear, the highway was straight, level and dry. The concrete pavement was 20 feet wide and constructed on a fill with shoulders on each side of the highway some 6 to 8 inches higher than the concrete. The shoulders were level out from each side of the concrete for about 12 feet, then dipped for 4 or 5 feet before starting down the steeply inclined bank of the fill. There was no obstruction to Osborn's view ahead as he approached from the south. The boy was 4' 3½'' tall. The vegetation on the shoulder of the highway was only ankle deep to the boy. Osborn testified he was driving only 40 miles per hour. In view of other facts and circumstances hereinafter set out, the jury had a right to conclude that Osborn was mistaken in that estimate of his speed. There were no other cars on the highway moving in either direction, and appellant Osborn was the only surviving eyewitness. After the accident a number of persons quickly gathered there. Osborn was a salesman, travelled by automobile, had been over that highway many times and was fully familiar with it. The accident occurred at high noon and nothing appears of record which would have distracted Osborn's attention from his duty to keep a lookout for persons on or about to go onto the highway.

From the evidence the jury could reasonably find that Lawrence had come up a path on the east side of the fill or embankment, had crossed the twelve foot shoulder in plain view of Osborn, and had come onto the pavement with an apparent intention of continuing on across the concrete paving. Osborn testified Lawrence ran straight west across the concrete highway with his head down and did not look either north or south, and was struck while so running west when at a point about 2 feet west of the center line of the highway. He was struck by the front of the hood or radiator just to the left of the center of the front of the automobile. At some point, which the record does not clearly disclose, Osborn turned the automobile to the left (northwest). It ran northwest onto and across the left and west side of the highway and out onto the left and west shoulder thereof, where it came to a stop, headed northwest, against and over a highway marker sign which was 8 feet west of the concrete highway, bending the marker down. The body of the boy then lay at the west

edge of the concrete pavement and was 28 feet further north than the front of the automobile. He was dead when Osborn reached him. The highway marker was 100 feet north of where Lawrence was struck. Osborn testified that he put his foot on the brake and turned the automobile to the left but that he did not sound the horn. After the accident there were skid marks 81 feet in length leading up to the back of Osborn's car. These skid marks started very close to the center of the highway and angled diagonally northwest. At the scene of the accident and immediately thereafter, Osborn stated that "he didn't see him (the boy) until he hit him". By deposition and upon the trial Osborn testified he saw Lawrence when his automobile was 15 feet south of the boy.

Upon these facts, and the inferences reasonably to be drawn therefrom, appellants contend that no submissible case was made for the jury; that the giving of respondents' instruction No. 1 was error because the evidence did not support the three above mentioned alternative submissions in the instruction. These two related assignments may be considered together.

As Osborn was driving his automobile north along the clear unobstructed highway and approaching the place of the accident he was under the duty imposed ▇▇▇ by law to exercise the highest degree of care (Kaley v. Huntley, 333 Mo. 771, 63 S. W. (2d) 21), and to keep a lookout in the direction the automobile was moving. To have failed to see what could have been seen by proper observation in the exercise of the highest degree of care would have been as much negligence as not to have looked at all. Kaley v. Huntley, supra, Miller v. Williams (Mo. Sup.), 76 S. W. (2d) 355. Osborn's clear view down the highway ahead of him enabled him to see the shoulders of the highway as well as the concrete pavement itself. To see one was to see both. It was his duty to keep a vigilant lookout both ahead and laterally ahead (Hornbuckle v. McCarty, 295 Mo. 162, 173, 243 S. W. 327, Brown v. Toedebusch Transfer, Inc., 354 Mo. 611, 190 S. W. (2d) 239), so as to see anyone on the shoulders of the highway on each side, give timely warning, slacken speed, or turn aside upon the first appearance of danger. Miller v. Williams, supra. It is true that Osborn testified that he did not see Lawrence until his automobile was but 15 feet south of the boy, at which time Osborn testified the boy was on the east half of the concrete slab and running west (but Osborn stated at the scene of the accident that he never saw the boy until he hit him, at which time Lawrence was on the west half of the concrete slab). But whether he first saw the boy on the east half or the west half of the 20 foot concrete highway is not the test of Osborn's duty. The real test of his duty under the humanitarian doctrine under these circumstances is when could he have seen the boy in a position of peril if he had been looking. There is nothing in Osborn's testimony to indicate where or in what direction he was looking or whether he was looking ahead of or behind him as he ap-

proached the scent of this casualty in his automobile But Osborn's duty began when he saw, or by the exercise of the highest degree of case, first could have seen the boy moving toward the path of his automobile apparently intending to continue into its path and apparently oblivious of its approach, and when the peril became imminent. Measured by Osborn's legal duty could the jury reasonably have inferred from the evidence that a failure by Osborn, after peril arose, to slacken speed, or turn aside or warn was the proximate cause of striking the boy? We think so.

We agree with appellants that the humanitarian doctrine does not apply if the evidence does not show Osborn could have avoided the collision after he saw or could have seen the boy in peril, but we do not agree that the trial court erred in submitting the instant case to the jury. After Lawrence came up the incline and was on the east shoulder of the highway there was nothing to obstruct Osborn's view of him. It was Osborn's duty to take note of Lawrence and his movements and however negligent the boy may have been in going out onto the concrete highway in front of Osborn's automobile is unavailing to appellants under the humanitarian theory of submission. It is not clear from the record just where Osborn turned to the left, but as Lawrence moved straight west across the concrete and was struck on the west half of the highway, the jury could reasonably have concluded that if Osborn had turned a little to his right, or had even continued due north, the automobile would not have hit the boy. The jury could reasonably have found that Osborn, if he had been looking in the direction he was driving, could have seen Lawrence start toward, onto and across the highway when the automobile was a sufficient distance south as that Osborn could have sounded a warning, which he admittedly failed to do, and that Osborn could thereby have averted the tragedy. Under these circumstances, a duty to warn is part and parcel of the humanitarian doctrine, and it would not be unreasonable for the jury to find that a timely warning would have aroused the boy's attention and saved his life. The evidence fairly warrants the inference that a slackening of speed, even momentarily, would have permitted the running boy to escape the danger. Another step or two would probably have been sufficient to save him. Pitcher v. Schoch, 345 Mo. 1184, 139 S. W. (2d) 463, 467. We deal with that situation under the humanitarian doctrine, as it then existed at the instant peril arose. It was Osborn's duty when the situation of peril arose to be cognizant of his own speed, his own line of travel, his ability to check his speed or sound a warning or turn aside as well as to be alert and cognizant of the position and movements of the boy. The jury had a right to reasonably conclude from the instant facts that there was a place and time when, in the exercise of the highest degree of care, and after peril became imminent, and when action could be effective, that Osborn could have

avoided the collision by slackening speed or by turning right instead of left or by warning, and that he negligently failed to do so. Appellants' argument in this court seems to proceed upon the theory that Osborn was under no duty in the driving of his automobile to be cognizant of the situation out ahead of him and ready to act upon the appearance of danger, and was under no duty to have seen or to have acted before Osborn states he saw and acted. Such is not the law. Banks v. Morris & Co., 302 Mo. 254, 257 S. W. 482, Perkins v. Terminal Railroad Association, 340 Mo. 868, 102 S. W. (2d) 915.

What we have said disposes also of the appellants' contention that the evidence did not support each of the three alternative grounds of recovery as submitted in respondents' instruction 1.

█ Appellants contend that instruction 1 was further erroneous in view of the three phase alternative submission, because by such form of submission a verdict for plaintiffs was possible if only four jurors found affirmatively on each of the three separate alternative submissions. Appellant says this point has never been decided by our courts, but cites State v. Pruitt, 202 Mo. 49, 100 S. W. 431, a prosecution for incest. That case is no authority for appellants' position here. Instruction 1 was a proper instruction. Each of its three alternatives was a proper submission based upon the evidence, and could have been and must be presumed to have been found by the jury from the evidence. This complaint against the instruction appears frivolous and is without merit.

█ Appellants next contend that the respondents' instruction 2, which did not predicate a verdict but which was only a definitive instruction, and which concluded the definition of the highest degree of care with the words "such care as would be exercised by a very careful and prudent person *under the same or similar circumstances as those referred to in the evidence,*" injected antecedent negligence into the humanitarian submission. Appellants' position is that the words just above italicized bring the instruction within the rule laid down in Reiling v. Russell, 348 Mo. 279, 153 S. W. (2d) 6, and other cases cited in appellants' brief. The instruction condemned in Reiling v. Russell, supra, which covered the entire case, after defining the highest degree of care stated that "the failure to exercise the highest degree of care would constitute negligence", which of itself distinguishes the situation presented in the instant case. However, here the appellants requested and the court gave instruction A limiting the jury's consideration to the humanitarian phase of the case only, and excluding all primary negligence consideration. Said instruction A was as follows: "The Court instructs the jury that plaintiffs have submitted their case to you under what is known in law as the Humanitarian Doctrine and not upon any negligence or any act or omission of Mr. Osborn occurring before Lawrence Wright was actually in a position of imminent peril, if you find he was, and,

under said theory of law, Mr. Osborn was under no legal duty whatever to the said Lawrence Wright until after he was actually in a position of imminent peril of being struck by the automobile and until after Mr. Osborn could have known thereof, as submitted to you under Instruction No. 1, and if, upon all the evidence fairly considered, you do not find that after the said Lawrence Wright was in a position of imminent peril, if he was, and after Mr. Osborn could have known thereof, as submitted to you in said instruction, that Mr. Osborn could thereafter, by the use of the highest degree of care and the means at hand and with reasonable safety to himself, and in the time and distance he then had, have prevented striking said Lawrence Wright, then, regardless of any other fact or issue, you cannot return a verdict for plaintiffs and your verdict must be for defendants.''

If we agreed, which we do not, that instruction 2 opened to the jury the door to the consideration of primary negligence, the limiting instruction A effectively and forever closed such door. In no uncertain terms the jury were told by instruction A that regardless of any other fact or issue Osborn was under no duty whatever to the boy until peril arose and Osborn could have known of the peril. Consideration by the jury of any possible theory of primary negligence was foreclosed by that instruction. Appellants contend, however, that under the rule in State ex rel. Long v. Ellison, 272 Mo. 571, 199 S. W. 984, 988, that the error they claim inheres in instruction 2 is not cured by a correct or limiting instruction given at the instance of the adverse party. Appellants apparently have misinterpreted the rule announced in State ex rel. Long v. Ellison, supra, and since followed by us in other cases. That rule there so announced applies to an instruction which predicates a verdict. Instruction 2 does not predicate a verdict.

In McDonald v. Kansas City Gas Company, 332 Mo. 356, 364, 59 S. W. (2d) 37, we reaffirmed the rule of State ex rel. Long v. Ellison, supra, and said: ''It is, of course, true . . . that an instruction, *purporting to cover the whole case and authorize a verdict*, is erroneous if it leaves out any facts, necessary to be found before the plaintiff is entitled to recover, and that, where an instruction does leave out such an essential fact, the error is not cured by an instruction for defendant requiring a finding of such a fact before recovery can be had against it. This is because the two instructions would be conflicting, since the plaintiff's instruction would authorize a verdict for the plaintiff without finding such vital fact, while the defendants' instruction would inform the jury that they could not find a verdict for the plaintiff without finding such a vital fact. (. . . State ex rel. Long v. Ellison, 272 Mo. 571, 199 S. W. 984; . . . ) However, it has long been settled that instructions must be read and construed together and 'that, where a series of instructions taken together contains a complete exposition of the law and covers every

phase of the case, the verdict rendered thereon will be sustained, even though the instructions when taken separately may be incomplete and open to objection and criticism.' '' (Emphasis ours.)

Instruction 2, not covering the entire case nor authorizing a verdict, and being merely definitive in character is not within the class claimed for it by appellants. As above stated, we think it is to be distinguished in any event, from instructions of the class ruled in cases like Reiling v. Russell, supra. We think the instructions given in the instant case properly submit the law to the jury and cover every required phase of the case. There is no merit in appellants' contention with respect to instruction 2.

It is last contended by appellants that the damages awarded by the jury in their discretion and approved by the trial court in the amount of $8,695.00 are excessive. Lawrence would have been nine years old in September, 1945. He lived with his father and mother in their home near Platte City, Missouri, attained the highest grades in school and was in good health. No formula exists by which it may be determined whether a jury award of damages is excessive under the instant circumstances. Courts determine this character of question in each case upon its own facts, due consideration being given to uniformity of decision, economic conditions, expressed legislative policy and all pertinent factors. The test we must finally meet, however, is whether the size of the verdict is such as to shock the conscience of the court; or whether it is within the bounds of reason. We have considered this many faceted question, the cases cited, and many cases not cited in the brief of either appellants or respondents. Giving proper weight to all matters which we must consider, we have concluded that the verdict in the instant case is well within the bounds of reason. The assignment is overruled.

Finding no reversible error the judgment of the trial court must be and the same is hereby affirmed.

It is so ordered. All concur.