LULA MAE McCoy ERICKSON, Appellant, v. KANSAS CITY PUBLIC SERVICE COMPANY, a Corporation, Respondent, No. 43580—265 S. W. (2d) 401.

Division Two, March 8, 1954.

*Geo. W. Meyer, David W. Barry* and *Meyer, Smith, Wetzel & Barry* for appellant.

*Charles L. Carr, R. Carter Tucker, John Murphy, William H. Wilson, J. Gordon Siddens, C. Thomas Carr* and *Tucker, Murphy, Wilson & Siddens* for respondent.

654

WESTHUES, C.—This is an action for damages for personal injuries alleged to have been sustained by plaintiff when a bus of the defendant company struck a car plaintiff was driving near the intersection of 27th Street and Raytown Road in Jackson County, Missouri. A jury returned a verdict in plaintiff's favor in the sum of $10,000. The trial court sustained defendant's motion for new trial on the ground that the court erred in giving plaintiff's instruction No. 1. From that order, plaintiff appealed.

The trial court did not indicate wherein the instruction was erroneous. The defendant in its brief says it was error to give instruction No. 1 because the evidence was insufficient to sustain a verdict in plaintiff's favor under the humanitarian doctrine as submitted by the instruction. Defendant further contends that the definition of the term "highest degree of care" as contained in the instruction placed a greater burden on the defendant than required by law.

We have concluded that the evidence justified a submission of the case to a jury under humanitarian negligence. We shall undertake to make a brief statement of the evidence most favorable to plaintiff; 27th Street is an east-west roadway, 40' wide from curb to curb. It is intersected on the south by Raytown Road, a northwest-southeast street, and Chelsea Avenue, a north-south street, which streets merge immediately south of and at their junction with 27th Street. Raytown Road is 40'6" wide and Chelsea Avenue, 26' in width. Neither is a through street. The south curb line of 27th Street curves to the south, beginning at a point about 65' or 70' west of the west curb of Chelsea, so that at the junction of Raytown Road and Chelsea Avenue with 27th Street, the distance from the north curb line of 27th to the south curb line at Chelsea is about 60'. Traffic entering

27th Street from Raytown Road and Chelsea must turn either westward or eastward on 27th. Northbound cars on Raytown Road enter 27th in a northwest direction. There are no stop signs on either 27th Street or Raytown Road. There is a sign reading "Slow to 15" at the south curb of 27th about 100' west of Chelsea and a sign reading "Slow" on the northeast curb line of Raytown Road about 20' south of 27th Street. There is a downgrade on 27th eastward toward the junction and an upgrade from the south on Raytown Road toward the intersection. At the time of the collision, 5:00 A.M. on June 21, 1947, plaintiff was driving in a northwesterly direction from Raytown Road into the intersection and the bus was being driven east on 27th Street. The pavement (black top) was wet.

Plaintiff testified that as she approached the intersection she looked to the west on 27th and saw no traffic; then she looked to the east and observed no traffic; that she then looked again to the west when her car was about 10' south of the eastbound traffic lane on 27th Street and saw a bus coming from the west at a high rate of speed; that the bus was then 120' or more to the west; that if she had stopped her car, she would have been in the direct line of the bus; that she was driving at about 10 or 15 miles per hour; that she stepped on the accelerator and drove more directly north, "instead of taking the true course of the street," in entering 27th Street from Raytown Road and when she was near the center line of 27th, the bus struck her car. She stated that when she first saw the bus it was near the south curb of 27th Street; that as she drove north, the bus swerved northward; that at the time of the collision, her car was about the center of 27th or partially to the north thereof; that the collision occurred less than 20' from the north curb line.

A police officer testified that debris caused by the collision was near the center of 27th Street. The vehicles came to rest about 80' east of the point of collision and at the north side of 27th Street.

The bus driver's testimony was to the effect that as he was driving east on 27th Street, at about 5:00 A.M., approaching the intersection of 27th and Raytown Road, he saw a car on Raytown Road coming toward the intersection at about 30 miles per hour; that "as I saw this car wasn't going to stop, I sounded my horn and applied my brakes, trying to bring my vehicle under control." He further testified that when he applied his brakes, the pavement being wet, the rear of the bus skidded southward causing the bus to go more in a northeasterly direction until it collided with the car near the center of 27th Street. It may be stated here that at the point of collision, 27th Street, due to the south curb's curving southward, is about 50' in width. The defendant's evidence was that the collision occurred about 23' south of the north curb. Plaintiff testified it was about 20' or less from the north curb. All parties agreed that no other traffic was on any of the streets near the intersection at that time. Plaintiff stated that if

656

the bus had continued in a straight course east on 27th Street, no collision would have occurred. The bus driver's evidence supports this theory.

It is evident that a humanitarian case was made. The defendant's evidence in some respects aids plaintiff's case. The bus driver testified he realized plaintiff was not going to stop for the intersection; that he immediately applied the brakes of the ▮▮▮ bus in an attempt to stop. The bus driver stated he was driving at about 15 miles per hour and slowed down to about 5 miles per hour before the collision. A jury could legitimately draw the inference that the bus driver did not slow the speed of the bus as he says he did. That the vehicles did not come to a standstill until 80′ east of the point of collision and the distances travelled by the vehicles after the bus driver realized plaintiff was not going to stop are facts inconsistent with the bus driver's evidence that he slowed the speed of the bus to 5 miles per hour. According to plaintiff's evidence, the bus travelled over 100′ from the point where she first saw it to the point of collision while she, driving during that same time, travelled only about 60′. The evidence of plaintiff, as well as that of the bus driver, justified a finding that, if the bus driver had reduced his speed and continued on a straight course, no collision would have occurred. The trial court was justified in submitting the case to a jury. Wofford v. St. Louis Public Service Company, Mo., 252 S.W.(2d) 529, l.c. 531 (4); Elkin v. St. Louis Public Service Company, 335 Mo. 951, 74 S.W.(2d) 600, l.c. 603 (4-6); Wright v. Osborn, 356 Mo. 382, 201 S.W.(2d) 935, l.c. 937, 938 (2-6).

▮▮ The definition of the "highest degree of care" which defendant says cast a greater burden on it than required by law reads as follows:

"The term 'highest degree of care' as used in these instructions means the use, with respect to operating said bus, of the highest degree of care practicable by very careful, skillful and experienced men in the same kind of business."

Plaintiff cites Section 390.131 (2), Supp. RSMo 1951, VAMS, which reads: "Every driver employed by motor carriers shall be at least eighteen years of age, of good moral character, and shall be fully competent to operate the motor vehicle under his charge." That section was enacted in 1951 and is in substance the same as Section 390.-130 (2), RSMo 1949, which was repealed. The section now in force requires that drivers of motor carriers be fully competent but does not require them to be very skillful and experienced. We also note Section 304.010, RSMo 1949, VAMS, which applies to all drivers of motor vehicles including bus drivers. This section provides that "Every person operating a motor vehicle on the highways of this state shall drive the same in a careful and prudent manner, and shall exercise the highest degree of care, * * *."

Plaintiff has not cited any statute which required the defendant to operate its busses by *"very* skillful and experienced men in the same kind of business." (Emphasis ours) We do not think that the cases cited by plaintiff, Burlingame v. Landis, 362 Mo. 523, 242 S.W. (2d) 578, and Borgstede v. Waldbauer, 337 Mo. 1205, 88 S.W.(2d) 373, support plaintiff's theory. Those cases dealt with the care required of drivers of cars not for hire. We did not rule in those cases that operators of public conveyances were required to be "very skillful and experienced men in the same kind of business." The cases of Loftus v. Metropolitan Street Ry. Co., 220 Mo. 470, 119 S.W.(2d) 942, and Hale v. St. Louis Public Service Company, Mo. App., 238 S.W.(2d) 876, dealt with the law of carrier and passenger. In the case now under consideration, we are dealing with a collision of a bus and a car driven by plaintiff. The question of carrier and passenger is not involved. The duty imposed on the bus driver and his employer as to plaintiff should be the same as that which the law imposes on all operators of motor vehicles while using the public streets and roads.

In support of her contention that the giving of instruction No. 1 constituted harmless error, if, indeed, there was error, plaintiff cites the cases of Robinson v. O'Shanzky, Mo. App., 96 S.W.(2d) 895, and Tureen v. Peoples Motorbus Co., Mo. App., 97 S.W.(2d) 847. In Robinson v. O'Shanzky, supra, l.c. 899 (11), the St. Louis Court of Appeals held an instruction erroneous which defined the highest degree of care as "such care as would be exercised by a very skillful and prudent driver of an automobile under the same or similar circumstances." The court, however, held the error harmless and affirmed a judgment in plaintiff's favor. In Tureen v. Peoples Motorbus Co., supra, there was a verdict for the defendant. Plaintiff insisted that defendant's instruction on the quantum of care required of the bus driver was insufficient in that it did not require the care "of a very skillful person." The court held that since there was no evidence on the subject of skill, the instruction was not erroneous. That was a passenger and carrier case.

In the case now before us, the trial court granted a new trial assigning as ground therefor that instruction No. 1 was erroneous. It was erroneous, but plaintiff says there was no evidence introduced as to the skill and experience of the bus driver, therefore, the error was harmless as was ruled in the Robinson case, supra. We need not speculate what this court would have held as to "harmless error" if the trial court had not granted a new trial. The trial court did grant a new trial and in such a case this court is inclined to affirm such ruling if supported by error in the case. Martin v. Martinous, Mo. App., 219 S.W. (2d) 667, l.c. 674(6), and cases there cited. See also Stroh v. Johns 264 S.W.(2d) 304, and cases cited therein.

Other grounds assigned for granting a new trial, that the verdict was grossly excessive and that prejudice resulted from the examination

of the jurors, need not be considered since we have concluded the trial court was justified in granting a new trial.

The order of the trial court is hereby sustained and the cause remanded.

It is so ordered. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.