Winifred Smith ANTHONY (Plaintiff), Respondent,

v.

James H. MORROW and Gustaff Kurrich, Defendants,

Gustaff Kurrich, Appellant.

No. 29690.

St. Louis Court of Appeals.

Missouri.

Nov. 5, 1957.

Rehearing Denied Dec. 2, 1957.

Alexander & Robertson, L. A. Robertson, and George W. Perry, St. Louis, for appellant Gustaff Kurrich.

Morris B. Kessler, Ben F. York, St. Louis, for respondent.

ANDERSON, Judge.

This is a negligence action instituted by plaintiff, Winifred Smith Anthony, against James H. Morrow and Gustaff Kurrich. In said action plaintiff sought to recover damages for personal injuries sustained by her as the result of a collision between a pickup truck being driven by defendant Kurrich, in which truck she was a passenger, and an automobile being operated by defendant Morrow. Defendant Kurrich filed a cross claim against defendant Morrow in which he sought to recover damages for personal injuries. The prayer of said cross claim was for $15,000 damages. Defendant Morrow filed a cross claim against defendant Kurrich in which he claimed damages for personal injuries in the sum of $5,000. The trial resulted in a verdict for plaintiff on her cause of action in the sum of $6,500 against both defendants, in favor of defendant Morrow on Kurrich's cross claim, and in favor of defendant Kurrich on the cross claim of defendant Morrow. Defendant Kurrich has appealed.

It is suggested by respondent that this court does not have jurisdiction of the appeal for the reason that the amount in controversy, exclusive of costs, exceeds the sum of $7,500. In this connection, it is pointed out that the amount in controversy is the sum of $6,500 awarded plaintiff on her cause of action, plus $15,000—the amount prayed for in appellant's cross claim against defendant Morrow.

There can be no doubt that if the cross claim of defendant Kurrich were before us the jurisdiction of the appeal would be in

the Supreme Court. Levin v. Caldwell, Mo. Sup., 285 S.W.2d 655. However, by reference to the notice of appeal it will be seen that there was no appeal from the judgment on said cross claim. Said notice recites that Gustaff Kurrich appeals to the St. Louis Court of Appeals from the judgment "in favor of plaintiff and against defendants entered in this action on the 27th day of March, 1956." The notice of appeal makes no mention of that separate and distinct portion of the judgment which denied appellant relief on his cross claim. And, while it is true that notices of appeal are to be liberally construed with a view to deciding cases on their merits, Weller v. Hayes Truck Lines, 355 Mo. 695, 197 S.W.2d 657, we are of the opinion that the notice in the case at bar contains nothing which indicates a good faith attempt to appeal from the entire judgment. The designation of that part of the judgment appealed from is so clear and unmistakable that it cannot be construed otherwise than to exclude that portion of the judgment denying relief to appellant on his cross claim. For that reason, that portion of the judgment which disposes of appellant's cross claim is not before us for review and cannot be considered in ascertaining the amount in controversy for the purpose of determining where the appeal lies. The amount in controversy here is $6,500.

In reaching the above decision, and in taking jurisdiction of the appeal from that portion of the judgment in plaintiff's favor, we have not overlooked the general rule that a party may not appeal from a part of a judgment. Gloria Lee Realty Co. v. Madigan, Mo.App., 243 S.W.2d 118; Biederman Furniture Co. v. Isbell, Mo. App., 102 S.W.2d 746. An apparent exception to this rule is recognized whereby an appeal will lie from a part of a judgment where that part is the result of the trial of issues distinct, entire, and severable from the other issues tried. Beckmann v. Beckmann, 358 Mo. 1029, 218 S.W.2d 566, 9 A.L.R.2d 428. Such is the situation in the case at bar. Plaintiff's claim and appellant's cross claim are separate and distinct causes of action, and appellant should be allowed to appeal from either the entire judgment or that part thereof which disposes of his cross claim.

There is another reason why it cannot be said that the amount in controversy, exclusive of costs, exceeds the sum of $7,500. During his oral argument in this court appellant's counsel, on behalf of his client, voluntarily withdrew all complaints of error with respect to the trial of the issues raised by said cross claim.

The accident occurred on July 25, 1950, at the intersection of Bellefontaine and Chambers Roads in St. Louis County. Bellefontaine Road is a north and south thoroughfare. Chambers Road runs east and west. There is a stop sign for westbound traffic on Chambers Road located about 30 feet east of the intersection. There is no stop sign at said intersection for northbound traffic on Bellefontaine Road. Bellefontaine Road is a two-lane highway. Chambers Road, at the intersection, has four lanes. At the southeast corner of the intersection there is a tree and some shrubbery. This shrubbery is also referred to as a hedge. Plaintiff testified that this shrubbery was about four feet high. Appellant said it was seven or eight feet high, and that it obstructed the view of traffic from the east for one traveling northwardly toward said intersection. In fact, he stated that one traveling northwardly could not see eastwardly down Chambers Road until he got into the intersection. However, defendant Morrow gave the following testimony: "Q. Let's assume you were forty-five feet south of Chambers, could you look diagonally across to your right and see a car coming up there? A. Yes * * * I would say if you were back a couple of hundred feet you could still see him, coming up Bellefontaine Road, coming north on Bellefontaine Road, if you were a couple of hundred feet back from Chambers Road; you could still see into Chambers Road ten or fifteen feet,

when a car was coming up to the intersection. * * * I still say you could see back into Chambers Road, when you were one hundred feet south of Chambers. Q. And can you see that traffic approaching Bellefontaine Road as you near the south line of Chambers? A. Yes."

Plaintiff testified that one driving north on Bellefontaine could see automobiles coming from the east on Chambers Road. She stated that she saw the Morrow car after it got to the stop sign and before it entered the intersection. From that time until the collision the Morrow car did not stop. She did not know where the two cars came in contact, but stated it was in the east lane of Bellefontaine Road. She stated that Morrow made a left turn in front of appellant's truck. Immediately before the accident she said to appellant: "the fellow is going to hit us." Appellant then put his foot on the brake.

Portions of a deposition of defendant Morrow were introduced into evidence by plaintiff. He stated that prior to the accident he was headed west on Chambers Road with the intention to turn south on Bellefontaine Road. Before proceeding into Bellefontaine he waited until some cars on Bellefontaine Road passed. There were cars traveling both north and south. The cars coming north were about fifty feet from the intersection. He then proceeded "around the corner, when I got about ten or twelve inches from the grass part on the opposite side * * * the collision occurred; there was an automobile coming right when I started to make my turn." He stated that the front of his car was damaged from the fender to possibly the middle of the front door on the left side. When asked if, before the collision, he saw the truck that collided with his car, the witness replied: "Well, not to recognize it, no; I just saw a bunch of machines coming up to the intersection, and they were about fifty feet from the corner, and so I just went on ahead." He further testified that he observed the stop sign, right at Bellefontaine Road, and proceeded forward in low gear.

Plaintiff also introduced into evidence portions of a deposition of appellant. In said deposition appellant testified that as he proceeded north on Bellefontaine Road the speed of his truck was about 28 or 30 miles per hour. The right side of his truck was about three feet from the curb. He stated that he sounded his horn when he was 50 or 60 feet from Chambers Road. He slowed down to a speed of 20 miles per hour before he got to the intersection and before plaintiff spoke to him about the other car. At that time he was looking right out toward Chambers Road, but could see no machine coming. He stated that "she screamed that a machine was coming and I put on my brakes." The witness further testified: "Q. How far from Chambers Road were you when you first put on your brakes? A. Oh, I was into Chambers Road a little * * * well, I was just about going in there, and as soon as I seen him, I had the right-of-way, you know, and he was coming out and he never stopped and we hit just like that; he never stopped; if he would have stopped, I could have passed him. * * * Q. How far was the automobile from you when you first knew he was coming out of Chambers Road? A. About 25 or 30 feet." Appellant further testified that the collision occurred on the east side of Bellefontaine Road, and that he was going about 20 miles per hour, or a little less, at the time.

Emil Osthoff testified on behalf of appellant. He stated that he arrived at the scene of the accident shortly after it happened and talked to defendant Morrow. He testified that the latter stated he made the stop at Bellefontaine Road, looked toward the south and, seeing no one coming from that direction, pulled out into Bellefontaine when his car was hit by appellant's truck. He stated that the pickup truck was "pretty well in the center of the road—Bellefontaine Road." He thought the other car was on the west side of the road. The The pickup truck was facing northwest at somewhat of an angle to Bellefontaine Road, with its front end in the center of

the road. On cross-examination, the witness stated that the pickup truck was a little south of the intersection.

Defendant Morrow testified that he did not stop at the stop sign, which was 30 feet from the intersection, but at a point about 2 feet east of Bellefontaine Road. However, before reaching that point, and when about 12 or 15 feet from the east line of Bellefontaine, he looked toward his left for northbound traffic. At that time he saw traffic approaching about 200 feet away. He continued on and made his stop at Bellefontaine. His car was then about half a foot from the center line of Chambers Road. He remained stopped about half a minute, waiting for a transport truck that was stopped on the west side of Bellefontaine to pull out ahead of him. The cars he had seen 200 feet south passed through the intersection during that interval. He then entered Bellefontaine to make the turn south. When he started out there were a few cars, including appellant's truck, coming north on Bellefontaine. The nearest car of the approaching traffic was about 70 or 80 feet south of the south line of Chambers Road. He went in front of these cars and around the corner, and when he got all the way out of Chambers Road the accident happened. He stated that the collision occurred about five feet south of the south line of Chambers Road. At that time he was still making his left turn. His car was in low gear, traveling at about 5 or 8 miles per hour. He stated that the left front wheel of appellant's truck hit his car back of the front wheel and at the left door. Appellant's truck, when stopped, was west of the center black line of Bellefontaine Road. Morrow stated that his car came to a stop about one foot from the west edge of Bellefontaine Road, headed south. At the time of the collision his car was headed southwest. The witness stated that he heard plaintiff scream. At that time he was south of the south line of Chambers Road. He could give no estimate of the distance appellant's truck was from him at that time, but stated the collision

occurred a split second thereafter. He had completed his turn and was in the southbound lane when plaintiff screamed.

Defendant Kurrich testified that he was traveling about 35 miles per hour as he proceeded north toward the intersection. The right side of his car was about 3 or 3½ feet from the curb. There were no automobiles in front of or behind him. As he approached Chambers Road he slowed down to 18 or 20 miles per hour. When he got to within about five feet of Chambers Road he first saw defendant Morrow. As he approached Chambers Road his face was turned to the left. Then plaintiff screamed, "Gus, he is going to hit you." He looked up and put on his brakes. Defendant Morrow "was coming over in the north side of Chambers" at that time. He stated that he was one foot over the Chambers line before Morrow turned to his left. He reached a point one foot over the center line of Chambers Road when the cars collided.

The case was submitted as against appellant on the pleaded charge that "said defendant then and there negligently and carelessly failed and omitted to exercise the highest degree of care to keep a lookout or watch ahead and laterally in the direction he was driving his said motor truck and thereby negligently failed to timely discover the said automobile of James H. Morrow then and there in and upon said Chambers Road at said Bellefontaine Road and thereby collided with said automobile of defendant James H. Morrow and injured plaintiff as herein alleged, when by the exercise of the highest degree of care in keeping a lookout or watch as aforesaid said defendant could have avoided said collision and said injuries to the plaintiff."

Appellant says there was no evidence to support the submission of said charge.

The applicable rules of law were well stated by this court in Riley v. Young, Mo.App., 218 S.W.2d 805, loc. cit. 808, as follows:

"There is no doubt of the duty of the operator of a motor vehicle to keep a careful or vigilant watch ahead for other persons or vehicles on the highway; and for a motorist to fulfill this duty he must look in such an observant manner as to enable him to see and discover such conditions as one in the exercise of the highest degree of care for the safety of himself and others would be expected to see under like or similar circumstances. Kalcy v. Huntley, 333 Mo. 771, 63 S.W.2d 21; Brown v. Toedebush Transfer, 354 Mo. 611, 190 S.W.2d 239; Wright v. Osborn, 356 Mo. 382, 201 S.W.2d 935; Rohmann v. City of Richmond Heights, Mo.App., 135 S.W.2d 378. Such duty, being fixed, uniform, and continuous, is in that sense constant; and if a motorist, having the duty to look, fails to see what is plainly visible, he is guilty of negligence and liable for its consequences. Wright v. Osborn, supra; Rohmann v. City of Richmond Heights, supra."

See also, Schmidt v. Allen, Mo.Sup., 303 S.W.2d 652; James v. Berry, Mo.App., 301 S.W.2d 530; Douglas v. Whitledge, Mo. App., 302 S.W.2d 294; and Roux v. Pettus, Mo.App., 293 S.W.2d 144.

In determining whether the evidence is sufficient to support a submission of negligence in failing to keep a lookout, plaintiff is entitled to the benefit of all favorable evidence and all favorable inferences therefrom, whether that evidence be introduced by plaintiff or defendant. The only qualification to this rule is that plaintiff may not have the benefit of evidence introduced by a defendant which is contrary to the personal testimony of plaintiff, or is at war with the theory of plaintiff's case.

We have reviewed the evidence in the light of the above rules and have concluded that there was ample evidence to justify submitting to the jury appellant's alleged negligent failure to keep a lookout in the direction in which he was driving on the occasion in question.

It appears from the testimony of plaintiff that she saw the automobile of defendant Morrow after it passed the stop sign and before it entered the intersection. It does not appear from her testimony just where appellant's truck was at that time. However, from Morrow's testimony it appears that when he entered the intersection he observed cars coming from the south, the nearest one being 70 or 80 feet south of the intersection. Appellant's truck must have been among those approaching, and it may have been the lead vehicle, for appellant testified that as he approached the intersection there were no cars in front of him. At least, the jury could so infer. From this testimony, the jury could not only reasonably infer that appellant was at least 70 or 80 feet south of the intersection when Morrow entered same, but also that Morrow's presence was plainly visible to appellant. But appellant did not see the Morrow car at that time. In fact, according to his own testimony, the first time he saw the Morrow car was when plaintiff screamed. At that time appellant's truck was five feet south of the south line of the intersection. He put his foot on the brake and the collision occurred a split second thereafter at a point one foot over the center line of Chambers Road and, according to plaintiff's testimony, in the east lane of Bellefontaine Road. In our judgment, the court did not err in failing and refusing to direct a verdict for appellant.

Appellant next contends that the court erred in giving Instruction No. 3. Said instruction reads as follows:

"The Court instructs the jury that if you find and believe from the evidence that on the occasion mentioned in the evidence defendant, Gustaff Kurrich, was operating a truck with plaintiff as a passenger therein in a Northwardly direction along Bellefontaine Road; and if you further find that at the

same time, defendant James H. Morrow, drove his automobile in a Southwestwardly direction at the intersection of Chambers and Bellefontaine Roads and was making a left turn off Chambers Road to proceed Southwardly along Bellefontaine Road; and if you find and believe that a collision occurred between the two vehicles and that plaintiff was injured as a direct and proximate result thereof; and if you further find and believe that defendant Gustaff Kurrich, by the exercise of the highest degree of care in keeping a lookout or watch ahead in the direction in which he was operating his truck could have discovered the automobile of James H. Morrow in time, by the exercise of the highest degree of care, to have avoided the collision mentioned in the evidence; and if you further find and believe that said defendant failed to keep a lookout or watch ahead and that such failure, if any, on the part of defendant Gustaff Kurrich was negligence and if you further find that said negligence, if any, directly caused or directly contributed to cause the collision mentioned in the evidence and that plaintiff was exercising ordinary care for her own safety, if you so find, then your verdict should be in favor of plaintiff and against defendant Gustaff Kurrich."

■ It is urged that the instruction is erroneous for the reason that it authorizes a verdict solely upon failure to keep a lookout, and not upon failure to act after it became apparent there was danger of collision. Appellant says that failure to look can never be the proximate cause of a collision, but failure to act after seeing should be submitted in such cases. On this proposition, appellant cites dictum to that effect in Robinson v. Ross, Mo.App., 47 S.W.2d 122.

This same contention was made by the appellant in Nelson v. Evans, 338 Mo. 991, 93 S.W.2d 691, 693, but was rejected by the Supreme Court. In that case an instruction submitting the issue of contributory negligence substantially similar in terms to the instruction given in the case at bar was given by the trial court. Thereafter, the court sustained plaintiff's motion for new trial on the ground that it had erred in giving said instruction. In holding that the trial court erred in sustaining the motion, our Supreme Court said:

"It is further contended that the instruction authorized a verdict for defendant if the jury found that plaintiff failed to maintain proper vigilance and that the failure to keep a proper lookout can never be the proximate cause of a collision. The case of Robinson v. Ross (Mo.App.) 47 S.W. (2d) 122, loc. cit. 125, is cited as an authority. The point now under discussion was not ruled upon in that case. The opinion expressly so states. The court in the course of the opinion did say: 'One's failure to look is never the direct cause of a collision but such a failure merely prevents one from doing other things, in a pertinent case, such as stopping the car or swerving or sounding a warning, in order to avoid a collision.' The opinion goes on to say that that question was not presented to the court.

"The failure to keep a proper lookout is in many cases the only negligent act proven to support a verdict. In Alexander v. St. Louis-San Francisco R. Co., 327 Mo. 1012, 38 S.W.(2d) 1023, loc. cit. 1026(2), it was held that plaintiff's lack of vigilance constituted negligence as a matter of law, barring a recovery on primary negligence. To the same effect is the case of Woods v. Moore, 48 S.W.(2d) 202, loc. cit. 207 (7–9), an opinion by the Kansas City Court of Appeals. It ought, therefore, be sufficient to authorize a verdict if a jury finds that a party was negligent in failing to keep a proper lookout and that such negligence resulted in a collision or damage. So in this case it was sufficient, under the law, to authorize a verdict for the defendant if the jury found under instruction d, that plaintiff was negligent in having failed

to keep a careful and vigilant lookout and that as a result of such failure plaintiff's car was caused to collide with defendant's truck, and that the driver of the truck was at the time exercising the highest degree of care. We do not believe it necessary in such instructions to require the jury to further find that because of such failure to keep a lookout the negligent party failed to stop, or swerve, or sound a warning. By instruction d the jury was required to find, before authorizing a verdict, a causal connection between the negligence and the collision, also due care on the part of the defendant. We, therefore, rule that the trial court improperly granted respondent a new trial because of the giving of instruction d."

Appellant further contends that Instruction No. 3 was erroneous because it failed to require the jury to find that defendant had reason to believe a collision would result unless precautionary steps were taken after defendant saw or could have seen the Morrow car, and that he thereafter failed to take such measures to avoid the collision.

Suffice it to say that our Supreme Court has held that the suggested hypothesis is not an essential element of a case predicated on negligent failure to keep a lookout ahead or laterally. Horrell v. St. Louis Public Service Co., Mo.Sup., 277 S.W.2d 612. The case of Stakelback v. Neff, Mo.App., 13 S.W.2d 575, cited and relied on by appellant, is not controlling. In that case the negligence charged and submitted was not failure to keep a lookout, but failure of the defendant to stop his car, diminish the speed thereof, or swerve, after he saw or could have seen the plaintiff. We are bound by the Supreme Court's decision in the Horrell case, supra, and must hold that the instruction is not erroneous.

Finding no error in the record, the judgment appealed from is affirmed.

RUDDY, P. J., and MATTHES, J., concur.