**Lillie BURNETT, Respondent,**

v.

**ST. LOUIS PUBLIC SERVICE COMPANY,**
a Corporation, Appellant,
**Clarence Smith, Defendant.**

No. 47567.

Supreme Court of Missouri,

Division No. 2.

Sept. 12, 1960.

William M. Corrigan, St. Louis, for appellant.

Kenneth Jos. Downs, Downs & Sullivan, William L. Mason, Jr., St. Louis, for respondent.

BOHLING, Commissioner.

This action resulted from a collision between a streetcar and an automobile. Mrs. Lillie Burnett asked $100,000 damages for injuries allegedly sustained in the collision from the St. Louis Public Service Company, a corporation, she being a passenger on its streetcar, and Clarence Smith, the operator of the automobile. The jury returned a verdict for both defendants. Plaintiff's motion for a new trial was sustained on the ground, among others, that the verdict was against the weight of the evidence. Each defendant filed a notice of appeal but Mr. Smith withdrew his appeal. The corporate defendant has perfected its appeal.

The first "point" presented is appellant's contention that the court erred in failing to direct a verdict for appellant in accordance with its motion therefor at the close of all the evidence (see Stephens v. Kansas City Gas Co., 354 Mo. 835, 191 S.W.2d 601, 607 [12]), "for the reason that there was no substantial evidence to support the submission of the case on failure to keep a lookout, or any other pleaded assignment of negligence."

By submitting her case against appellant solely on the ground appellant's motorman "failed to exercise the highest degree of care to keep a lookout ahead of the said streetcar and to the south as the streetcar came into and proceeded across the intersection," respondent abandoned all other pleaded allegations of negligence against appellant. Thaller v. Skinner & Kennedy Co., Mo., 315 S.W.2d 124, 126 [1]; Smith v. St. Louis Pub. Serv. Co., 364 Mo. 104, 259 S.W.2d 692, 696 [3].

Granting a new trial on the ground the verdict is against the weight of the evidence is within the exercise of a broad judicial discretion resting in trial courts, and is not to be disturbed in the absence of manifest abuse. In the circumstances before us the evidence is to be reviewed in the light most favorable to the respondent, giving her the benefit of all the favorable evidence and favorable inferences legitimately drawn therefrom, while disregarding appellant's evidence unless it aids respondent's case. Respondent may not have the benefit of defendants' evidence which is contrary to her own and at war with her fundamental theory of the case. Batson v. Ormsbee, Mo.App., 304 S.W.2d 680, 681 [1, 6]; Anthony v. Morrow, Mo.App., 306 S.W.2d 581, 586 [5], cases cited by appellant. Respondent had the burden of proof, but the new trial order is to be sustained where there is sufficient probative evidence upon which a finding for her could be upheld on the submitted negligence. State ex rel. Atchison, T. & S. F. R. Co. v. Ellison, 268 Mo. 225, 186 S.W. 1075, 1076

[2]; Burr v. Singh, 362 Mo. 692, 243 S.W. 2d 295, 297 [1–3, 8, 9]; Berry v. Harmon, Mo., 323 S.W.2d 691, 693 [1, 5]; Hoefel v. Hammel, Mo.App., 228 S.W.2d 402, 405 [3–5].

Respondent called defendant Clarence Smith and appellant's motorman Emil Swoboda to the witness stand.

The collision occurred at the intersection of appellant's Hodiamont right-of-way with Union Avenue in the City of St. Louis about the noon hour on September 16, 1957. The weather was clear and dry. Defendant Smith was northbound on Union, a north-south street, 60 feet wide, with three lanes for traffic in each direction. A stop sign for northbound traffic is located 17 feet south of the south rail of appellant's eastbound track. Appellant's eastbound streetcars are required to stop before crossing this intersection. The testimony established that the streetcar here involved made this stop, and its overhang extended 18 or 24 inches beyond the rails.

Respondent, a passenger, was seated alone at the window in the third or fourth double seat from the front of appellant's eastbound streetcar, facing the front of the car. Her view of appellant's motorman was unobstructed. She could and did see northbound automobiles passing. She was watching the motorman, but not constantly, while crossing the intersection. On direct examination she stated the motorman "was looking down" as he was going across, and while she was watching him he never looked to his right or left. She did not know whether defendant Smith stopped at the stop sign. She first saw his automobile an instant before the collision, which occurred a little past the center of Union. On cross-examination respondent testified she did not and could not see the motorman's eyes, but she saw his head was "down" and saw him fooling with something in front of him. The impact between the streetcar and the automobile was not violent or heavy.

Defendant Smith was driving his 1957 Oldsmobile sedan, a new car in good con-

dition, north on Union Avenue, traveling about 20 m. p. h. in the curb, east, lane. He testified: He stopped about 3 feet south of the stop sign. He saw the streetcar stopped west of Union. The streetcar and he started into the intersection at or about at the same time; also that the streetcar was near the second southbound lane, almost to the center line, when he started up from his stopped position. He could not see the motorman's eyes, but the motorman was looking down, his head was down. He watched the motorman the entire time and if the motorman ever looked up at him it was just before the streetcar struck his automobile. There was no warning of the approach of the streetcar. He did not sound his horn or swerve his automobile. He estimated the highest speed of his automobile after leaving the stop sign was 5 m. p. h. The streetcar increased its speed while crossing Union but was not going too fast. Smith stopped his automobile in the curb lane south of the streetcar tracks and after it had been stopped for an instant or a second or two the right front corner (overhang) of the streetcar struck the end of his automobile's left front fender and bumper. The streetcar stopped as it hit the automobile, and the automobile remained east of the streetcar.

Emil Swoboda testified that when the intersection cleared, he rang his gong and started across Union Avenue. He had his head up as he was crossing the intersection. He first looked to the north for southbound traffic, and then took a quick look to the south and saw Smith's automobile approaching about 100 feet or so south of the tracks. He again looked to the north. When within a couple of feet of the center line he again looked to the south and saw Smith's automobile 50 or 75 feet away, traveling about 20 m. p. h. He continued to watch the automobile and started to apply his brake. The automobile slackened its speed but rolled past the stop sign at about 10 m. p. h. He stopped the streetcar a few feet in the second, middle, northbound lane. The automobile continued to slacken its speed, was

6 or 7 feet to the south, traveling 1 or 2 m. p. h., when the streetcar stopped, and struck the right front end of the streetcar. He also testified he had his foot on the brake pedal but did not press it until just a few feet before the automobile struck the streetcar, but he could not remember where he applied the brake. He did not apply the emergency brake, stating "it was not necessary."

There was testimony that appellant's motorman stated at the scene that he was traveling 15 m. p. h.; that he figured the automobile would stop but it rolled right on through the stop sign; that he first noticed the danger when about 2 feet from the automobile and could not stop in time; and that defendant Smith stated he first noticed danger of an accident when 4 feet away.

■■ On this issue in this primary negligence case it is not disputed that respondent was a passenger on appellant's streetcar; that appellant owed her duty to transport her safely, and we are of the opinion the evidence makes a prima facie case that the danger of a collision with defendant Smith's automobile was discoverable by appellant's motorman so as to have avoided the collision through a proper lookout if one had been kept by said motorman.

■ It is stated in Anthony v. Morrow, Mo.App., 306 S.W.2d 581, 586, "for a motorist to fulfill this duty [to maintain a proper lookout] he must look in such an observant manner as to enable him to see and discover such conditions as one in the exercise of the highest degree of care for the safety of himself and others would be expected to see under like or similar circumstances. * * * Such duty, being fixed, uniform, and continuous, is in that sense constant; and if a motorist, having the duty to look, fails to see what is plainly visible, he is guilty of negligence and liable for its consequences." Failure to exercise the proper care to maintain a proper lookout, where the duty to maintain a lookout exists, is negligence. Thaller v. Skinner & Kennedy Co., Mo., 315 S.W.2d 124, 129 [4]; Lanio v. Kansas City Pub. Serv. Co., Mo., 162 S.W.2d 862, 866 [7]. In Romandel v. Kansas City Pub. Serv. Co., Mo., 254 S.W.2d 585, 592 [17, 18], it was considered that a jury could infer a pedestrian was oblivious and her obliviousness was reasonably apparent to a southbound motorman from the fact the pedestrian, after starting, faced and walked westwardly, watching where she was walking, without looking northwardly until she was in the center of defendant's southbound track. In Ellis v. Metropolitan St. Ry. Co., 234 Mo. 657, 138 S.W. 23, 26, 28 [3], the weight of the testimony that a motorman's face was turned as if talking to someone in the car and that he was not looking ahead was held to be for the jury. See Lanio v. Kansas City Pub. Serv. Co., supra, 867 [8].

■ Appellant argues that respondent and her witness Smith testified they did not see appellant's motorman's eyes and, therefore, it cannot be inferred from their testimony that the operator failed to keep a proper lookout. The authorities mentioned above answer this argument. In addition, the argument ignores the fact that there was a collision between the streetcar and the automobile and, in the circumstances of this record, a jury could infer that the motorman was not maintaining a proper lookout.

■ All the evidence is to the effect that whatever injuries respondent may have sustained on the occasion in question occurred simultaneously with the collision between appellant's streetcar and Smith's automobile. Proximate cause may also be established by proof of facts and circumstances from which the causal connection may be inferred. State ex rel. City of St. Charles v. Haid, 325 Mo. 107, 28 S.W.2d 97, 102 [6]; Leek v. Dillard, Mo.App., 304 S.W.2d 60, 65.

We quote appellant's second and last point: "The action of the trial court in granting plaintiff a new trial against both defendants is an abuse of discretion because the court would necessarily have to believe

defendants' diametrically opposed theories as to how the accident occurred, which is a totally unrealistic and irreconcilable position."

A similar contention was presented upon the appeal of two defendants from an order granting plaintiff a new trial where each defendant, called by plaintiff, testified he was on his side of the highway and the other defendant swerved to the left and into collision with the testifying defendant's automobile, plaintiff's theory being that one or the other or both of the defendants failed to operate his automobile as close to the right hand side of the road as practicable, in Burr v. Singh, 362 Mo. 692, 243 S.W.2d 295. In disallowing the contention the court applied the following (loc. cit. 298 [4, 5]): "It has been held a plaintiff is not bound by the testimony of his own witnesses in so far as such testimony is contradicted by a plaintiff's other evidence. A jury may believe all of the testimony of any witness or none of it, or may accept it in part and reject it in part; just as the jury finds it to be true or false when considered in relation to the other testimony and the facts and circumstances in a case." See also Lay v. McGrane, Mo., 331 S.W.2d 592, 596 [3–6]; Shepard v. Harris, Mo., 329 S.W.2d 1, 4 [1].

 ██ Respondent predicated a recovery against defendant Smith on negligence in failing to stop his automobile at the stop sign for northbound traffic on Union Avenue. Defendant Smith's testimony that he stopped at said stop sign did not destroy appellant's motorman's testimony that Smith's automobile rolled past said sign at 10 m. p. h. Likewise, appellant's motorman's testimony that he saw Smith's automobile pass said stop sign without stopping did not destroy the testimony of respondent, defendant Smith and others to the effect said motorman did not maintain a proper lookout. "[I]t is as much negligence to fail to see that which can be observed by due care as it is negligence not to look at all." Kaley v. Huntley, 333 Mo. 771, 63

S.W.2d 21, 23 [3]. See also cases cited in Anthony v. Morrow, quoted supra; Weis v. Melvin, Mo., 219 S.W.2d 310; State ex rel. Kansas City So. Ry. Co. v. Shain, 340 Mo. 1195, 105 S.W.2d 915, 918 [6].

The testimony favorable to respondent that appellant's motorman had his head down, did not look to the right or left or up, was fooling with something in front of him, and did not notice danger until within 2 feet of Smith's automobile was in the case. If the jury considered the motorman looked when Smith was passing the stop sign, it could nevertheless find under the record before us that appellant's motorman failed to exercise the highest degree of care to keep a lookout ahead and to the south as the streetcar proceeded across the intersection.

Under this record the collision between the streetcar and the automobile was due to the conduct of one or the other or both of the defendants in operating their respective vehicles, and accepting part of defendant Smith's and appellant's motorman's testimony not contradictory of respondent's testimony or her theory of the case and rejecting part of each of said witnesses' testimony, and taking the most favorable view to respondent of the other testimony in the case, a jury could find that the collision was the result of the concurrent negligence of appellant's motorman and defendant Smith.

The order granting the new trial is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

LEEDY, P. J., EAGER and STORCKMAN, JJ., and BROADDUS, Special Judge, concur.