Velpo **WILLIAMS**, Plaintiff,

v.

**UNITED STATES of America,**
**Defendant.**

No. 67 C 291(1).

United States District Court
E. D. Missouri, E. D.

Oct. 14, 1968.

Charles E. Gray, Gray & Sommers, St. Louis, Mo., for plaintiff.

James M. Gordon, Asst. U. S. Atty., Veryl L. Riddle, U. S. Atty., St. Louis, Mo., for defendant.

## MEMORANDUM OPINION

HARPER, Chief Judge.

This action was instituted under the provisions of the Federal Tort Claim Act, 28 U.S.C. § 1346(b). It is a suit for the wrongful death of a child and is, therefore, brought for the use and benefit of both parents under the provisions of Section 537.070, RSMo 1959, V.A.M.S. Since the accident complained of occurred within the State of Missouri, under the Tort Claim Act, the law of that state controls.

The pleadings and the testimony show that the plaintiff is the natural father of one Valery McDonald who died as the result of being run over by the rear wheels of a United States Post Office mail truck on January 12, 1967. As such, he is the proper party to institute this action.

The accident resulting in the death of Valery McDonald occurred in the driveway of the United States Post Office in Kinloch, Missouri. This driveway is located immediately south of the Post Office Building which sits on the southeast corner of the intersection of Carson Road and Scott Avenue. It faces Carson Road. Immediately behind the Post Office, on Scott Avenue, is the Holy Angels School which the deceased attended. On January 12, 1967, school was dismissed at about 3:00 p. m., and shortly thereafter the deceased in the company of her brother and others proceeded west, up Scott Avenue, toward the intersection of Scott and Carson. They were traveling on the sidewalk on the south side of Scott. At about this same time, Alfred S. Taylor was proceeding south on Carson, driving the Post Office truck in question.

Taylor brought his truck to a stop at the stop sign at the intersection and then proceeded south on Carson Road until he was opposite the Post Office driveway in which the accident occurred. He then stopped to allow some oncoming traffic to pass and turned into that driveway. He again stopped when he reached the sidewalk proper. (It appears that there is a distance of about twelve feet between Carson Road and the sidewalk itself.) Taylor looked in both directions and did not see anyone and proceeded forward at a slow speed of about three miles per hour. After he had gone some nineteen to twenty feet he heard someone "holler" to him and he immediately stopped his truck and got out. He discovered that the left rear wheels of his truck had passed over the deceased. The evidence reveals that the mail truck involved is approximately twenty-four feet in length and that the rear wheels thereof, which are dual, are located about six feet from the end of that truck. Richard Jones, the Police Officer who investigated the accident, indicates that the center of the wheels made the contact.

The driveway into which Taylor turned is about twenty feet in width. As one turns into that driveway, on the right

there are a number of parking spaces for patrons of the Post Office. Thus, Taylor had positioned the truck on the left-hand side of the drive, near the building itself. Of course, such a positioning would more easily enable him to back into the loading dock of the Post Office.

The precise location of the deceased immediately before her death is a matter on which there was conflicting testimony. Louis McDonald, the deceased's brother, testified that the deceased was running ahead of him. When he approached a point near the window in the front of the Post Office, which is the point at which he indicates that he first saw the truck, the deceased returned to ask him a question. Then the deceased began running south again, and ran into the side of the truck. Valery tried to stop herself with her hands, but failed to do so and slid under the left rear wheels of the truck. One Roscoe Jackson, who was standing directly across the street from the Post Office, saw the entire accident. It was his testimony that the deceased, who was running fast, ran around the corner, did not stop, and ran into and under the rear wheels of the truck.

In evaluating this testimony it must be kept in mind that Louis McDonald is but ten years of age and is the brother of the deceased. On the other hand, Jackson was an entirely disinterested witness.

It is quite clear from the testimony that there were a number of children in the vicinity of the Post Office, and further, that Taylor was aware of the fact that there were usually children in this area. He had driven the route for some time, always arriving near 3:00 p. m.

The government by its answer did not urge the affirmative defense of contributory negligence. Therefore, the question before the court is: Was the defendant's driver negligent, and if so, was that negligence the cause of the decedent's death? The court would like to point out that in its brief the government concedes that the driver was required to exercise the "highest degree of care" as proscribed by Section 304.010 RSMo 1959, V.A.M.S. While the court will so analyze this case, it would like to point out that there is some question as to whether or not this is indeed the proper measure to be used here. The defendant's driver was pulling into a driveway. A fair question therefore exists as to whether or not this driveway constitutes a "highway" as used in that statute, or a "public thoroughfare" as defined by the cases decided in Missouri under that same statute. If not, then only "ordinary care" would have been required.

■ The highest degree of care requires that the individual involved use that degree of care that a very careful and prudent person would use under the same or similar circumstances (Missouri Approved Jury Instructions No. 11.01). It is clear that when children are involved Missouri courts have said that greater precautions are necessary due to the unpredictable acts of such young children. Harris v. Lane, 379 S.W.2d 635 (St.L.Mo.App.1954); Ozbun v. Vance, 323 S.W.2d 771 (Mo.1959); and Fortner v. St. Louis Public Service Co., 244 S.W.2d 10 (Mo.1951).

■ The problem then defined is: What precautions should have been taken which were not taken so that the defendant's duty of care was breached? The defendant's duty included a duty to maintain a lookout ahead and laterally. Evett v. Corbin, 305 S.W.2d 469 (Mo.1957). This duty includes the duty to see an observable pedestrian even though he might be on the shoulder or curb of the road. Wright v. Osburn, 356 Mo. 382, 201 S.W.2d 935 (Mo.1947). But as noted by the Kansas City Court of Appeals:

"He can not look in one direction all the time, and neither is he required to keep his head in constant swinging motion from side to side." Norris v. Winkler, 402 S.W.2d 24, 27 (K.C.Mo.App.1966). See also, Slaughter v. Myers, 335 S.W.2d 50 (Mo.1960) and Burke v. Renick, 249

**330**

S.W.2d 513 (St.L.Mo.App.1952). This court finds that from the evidence presented, the defendant's driver did not breach his duty of lookout. See Cervillo v. Manhattan Oil Co., 226 Mo.App. 1090, 49 S.W.2d 183 (1928), concurring opinion. The court notes that all of the cases plaintiff has cited involve situations in which the child was struck by the front of the car. None deal with this rear wheel problem in which the rear wheels are eighteen feet or more behind the driver and well below his height.

In the situation which confronted him Taylor stopped at the edge of the sidewalk proper and looked and failed to see anyone in a position of peril. He then slowly continued forward. He was pulling into a driveway to the right side of which was located a parking area. His zone of greatest danger would be this parking area from which cars could pull out or other pedestrians cross. The position which plaintiff's counsel urges would lead to a situation in which any time a driver observed or knew that young children were in proximity to his motor vehicle, he would have to constantly watch them to the exclusion of all else or would have to stop and wait until all of the children left the vicinity. This obviously is impracticable. Although the driver Taylor testified that the building was 75 to 85 feet in length, the court has examined the plaintiff's pictures and is of the opinion that the distance was about 50 feet. Accepting the testimony of Jackson, the disinterested witness, the defendant's truck was moving through the sidewalk area when the deceased rounded the Post Office corner and, therefore, was not in a position to have been seen by the driver. Under these conditions, with the deceased "running fast", it is clearly possible for her to have run the fifty odd feet during the same time as the truck moved about twenty feet. Hence, the driver having looked, and with a greater potential danger area ahead and to the right, had no duty to continually look back over his shoulder to the left. If one were to accept the testimony of the brother that the deceased stopped in front of the windows in the front of the Post Office at about the same time that the truck stopped or slowed to cross the sidewalk, then if Taylor had seen the deceased he would have seen not a running child, but one stopped in conversation. Thus as he moved forward he would have no reason to fear an accident with one who was some twenty to twenty-five feet away and naturally would look ahead and to the right, and would not and should not be expected to constantly look over his shoulder to the left to the exclusion of other directions, which he would have had to do to discover that the deceased put herself in a position of immediate danger by running toward the rear of the truck.

With the truck moving at about 3 miles per hour, it was traveling some 4.4 feet per second. If the deceased were running at the speed of 10 miles per hour, and the testimony is that she was running fast, she would travel some 14.6 feet per second. Clearly she could have traveled the 20 to 25 feet from the window area to the rear of the truck during the time that he moved forward, and it would seem that 2 to 3 seconds is not an unreasonable time for the driver to be looking ahead and to his right at the parking area rather than back over his left shoulder. In short, plaintiff has failed to establish a humanitarian case, as well as failing to establish one of primary negligence.

The court has found that the driver did not breach his duty to keep a careful lookout. The duty to warn or to stop is of course dependent on having a duty to see. If one does not see and is not required to see someone, then there is no duty to warn or to stop. Further, this court finds that the defendant's driver did not know nor could he have known of the deceased's position of immediate danger under the circumstances presented by the evidence, and therefore the driver did not breach his humanitarian duty. The driver did not have a duty to constantly look over his left shoulder to discover the deceased.

Thus this key element of the humanitarian case is not made. See Banks v. Morris & Co., 302 Mo. 254, 257 S.W.2d 482 (1924), and Missouri Approved Instructions Nos. 17.14 and 17.15.

Having thus found that the plaintiff has failed to establish that the defendant's driver, A. S. Taylor, was negligent, judgment must be rendered for the defendant.

The court adopts this memorandum opinion as its findings of fact and conclusions of law, and the clerk will prepare and enter the proper order to that effect.