MARY ABERNATHY, a Minor, by JAKE ABERNATHY, Guardian, Plaintiff-Respondent, v. ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, Defendant-Appellant, No. 42254—240 S. W. (2d) 914.

Division Two, June 11, 1951.

Rehearing Denied, July 9, 1951.

*Thompson, Mitchell, Thompson & Douglas, John O. Hichew* and *William G. Guerri* for appellant.

*Glennon T. Moran* and *Rene J. Lusser* for respondent.

TIPTON, J.—In the circuit court of the city of St. Louis, Missouri, the respondent recovered a judgment for $65,000 for personal injuries she received in a head-on collision between an automobile in which she was a passenger and a streetcar operated by appellant. From that judgment, appellant has duly appealed to this court.

The appellant has not complied with our rule 1.08, paragraph (b), which states, "The fair and concise statement of the facts shall

be in the form of a statement of the facts relevant to the questions presented for determination. * * * If desired, such statement may be followed by a statement of testimony of each witness relevant to the points presented." However, we believe that justice requires that this case be decided upon the merits and not dismissed under rule 1.15, as it presents a construction of the "vigilant watch ordinance" of the city of St. Louis.

Appellant's first assignment of error is that the trial court erred in not sustaining its motion for a directed verdict. We therefore will state the facts most favorable to the respondent so we may determine if the respondent made a submissible case.

Respondent did not testify as to the injuries she received in this head-on collision and it is inferred from the evidence that they were such that she was neither physically nor mentally able to do so. With commendable frankness appellant does not contend that the verdict for $65,000 is excessive.

The driver of the car in which respondent was a passenger was Joseph T. Willett. He was a resident of East St. Louis, Illinois and his deposition was read in evidence. Briefly, it is as follows: On March 5, 1949, at about 8:45 P. M. he went to the "Music Box" tavern and was asked by Eugene Fields to take his car and go get Billie Abernathy, a cousin of respondent, and bring her to the tavern; that he and respondent got in Fields' car which was parked on Olive Street and drove east to Grand Avenue, then he turned south on Grand Avenue behind a line of southbound traffic of from six to ten automobiles; and that as he pulled into the line of traffic he was about 20 feet behind the automobile immediately in front of him. He further stated that after turning into ▮▮▮ Grand Avenue he remembered nothing of what occurred. His first recollection after that was of waking up in a hospital the next morning. He also stated that the streets were wet on the night of the accident but he did not think it was raining at the time.

The record justified the following facts: That there was a head-on collision between the automobile in which respondent was a passenger and a northbound streetcar on Grand Avenue and this collision took place just north of the intersection of Forest Park Boulevard and Grand Avenue. This boulevard comes into Grand Avenue from the west but does not continue east thereof. There was a stop sign for southbound traffic on Grand Avenue just north of Forest Park Boulevard, but there was none for northbound traffic. The collision took place shortly after 9:00 P. M. and the automobile in which respondent was a passenger had been on the northbound streetcar track for some distance before reaching the intersection of the two streets. Some of the witnesses for respondent testified that this automobile went on the northbound track at the north entrance to a filling station located at the northwest corner of this intersection, and

the streetcar at that time was just south of the front end of a church located on the southwest corner of this intersection. The collision took place opposite the southbound stop sign on the northbound streetcar track. According to a plat introduced in evidence, the automobile was from 270 to 315 feet from the streetcar when the automobile first entered upon the northbound streetcar track. There was evidence that the automobile was traveling from 15 to 20 miles an hour as it entered on this track and continued at that rate of speed until the collision. However, one witness testified that just prior to the collision this automobile was going only 3 or 4 miles an hour. The evidence tended to show that at the time of the collision this automobile was headed in a southeasterly direction. There was testimony that the streetcar was traveling at 12 to 20 miles an hour and that it did not diminish its speed until after the collision. There was also evidence from which the jury could infer that the motorman of the streetcar did not apply his brakes until after the collision. The evidence showed that the automobile was shoved from 20 to 30 feet north after the collision by the streetcar. Respondent had evidence that the streetcar in question going 14 miles an hour could be stopped in 33 feet.

Forrest Oakley was the motorman of the streetcar and a witness for appellant. He testified that under the conditions existing at the time of the accident at Forest Park Boulevard and Grand Avenue, going at the speed of 20 miles an hour, he could make an emergency stop in 70 to 80 feet, at 17 miles an hour in 60 to 70 feet, and at 15 miles an hour in 50 to 60 feet; that the weather was clear and the street and tracks were dry; and that at time of the collision two southbound automobiles were stopped at the stop sign parallel to each other, one alongside the west curb of Grand Avenue and the other to the east and straddling the west rail of the southbound streetcar track.

■ As previously stated, the negligence submitted to the jury was a violation of what is known as the vigilant watch ordinance, Section 2219 of the Revised Code of St. Louis, 1936. Subsection 4 of this ordinance is the section involved in this case and it reads:

"The conductor, motorman, gripman, driver or any other person in charge of each car shall keep vigilant watch for all vehicles and persons on foot, especially children, either on the track or moving towards it, and on the first appearance of danger to such persons or vehicles, the car shall be stopped in the shortest time and space as possible."

This ordinance required this motorman of appellant to keep a vigilant watch at all times, and if he had done so he was bound to have seen the automobile in which respondent was a passenger when it first started to go upon the northbound track on Grand Avenue. Many times we have ruled that to look is to see. This ■ ordi-

nance also required this motorman to stop upon the first appearance of danger in the shortest time and space possible. It required more of this motorman than would be required of him under our humanitarian doctrine. Under that doctrine he is not required to act until the person or vehicle comes within the danger zone, but under the vigilant watch ordinance he is required to act upon the first appearance of danger. In other words, the motorman should have started to stop the streetcar when the automobile was approaching the danger zone. If the automobile was already upon the track at a distance so far from the streetcar that there could be no possible danger, the motorman need not have stopped, but he must stop the streetcar when it first became apparent that the automobile might continue to be driven on the track into the danger zone, that is to say, while he had ample time and space to stop the streetcar before it can run into the approaching automobile that is on the track.

Just where this point would be is a question for the triers of the facts to determine. Perkins v. Terminal R. R. Assn., 340 Mo. 868, 102 S. W. 2d 915. If the motorman fails to observe these requirements, then he is guilty of negligence under this ordinance. Esstman v. United Rwys. Co. of St. Louis, 216 S. W. 526; State ex rel. Vogt v. Reynolds, 295 Mo. 375, 244 S. W. 929.

Under the evidence most favorable to respondent, we hold that the motorman of the streetcar in question was negligent in failing to stop the streetcar before it collided head-on with the automobile in which respondent was a passenger. There was evidence that the streetcar was from 270 to 315 feet south of this automobile when the automobile first went upon the northbound streetcar track. There was evidence this streetcar, traveling from 12-14-15 to 20 miles an hour, could have been stopped in 33 to 80 feet. There was also evidence that this motorman made no effort to stop the streetcar until it struck his automobile. Under these facts the jury could have found that if the motorman had attempted to stop the streetcar upon the first appearance of danger to the automobile, this collision would have been avoided.

Appellant contends that this motorman had a right to assume that the driver of the automobile would leave the path of the streetcar until it came into the danger zone. These are the common law rules and we have already stated that under the vigilant watch ordinance the operator is required to act on the first appearance of danger. For these reasons, the cases cited by appellant are not in point.

Appellant further contends that its motion to dismiss should have been sustained because respondent failed to make a showing that the driver of the automobile in which respondent was a passenger could and would have stopped his automobile or driven out of the path of the streetcar had the streetcar been brought to a stop. We are not ruling that respondent is required to make such a showing.

However, under the evidence in this record, we believe the jury could infer that the driver of the automobile would have driven to the left of the streetcar if it had stopped. The evidence shows that just before the collision, the automobile was being driven in a southeasterly direction and the jury could infer that the driver was trying to get off the northbound track to the left of the streetcar. It is to be remembered that the motorman testified that there were two southbound automobiles stopped at the stop sign parallel to each other, one straddling the west rail of the southbound streetcar track. The jury could infer from this that the driver of the automobile in question could not turn to the west of the streetcar on account of this other automobile.

We think the jury could also infer from the testimony of witness Minaird that the automobile would have stopped before the collision because he testified that just before the collision this automobile had been slowed to 3 to 4 miles an hour. Appellant says this testimony is contrary to the physical facts and should ▇▇▇▇ be disregarded. It bases this contention on the photograph of the wrecked automobile and contends the damages to it were so great that it had to be going faster at that time. We do not think so but think it was a question for the jury. We cannot say from the photograph of the wrecked automobile how fast it was going at the moment of the impact.

We rule that the trial court properly overruled appellant's motion to dismiss.

▇▇ Appellant contends that the giving of Instruction No. 1 at the request of respondent was reversible error.

That instruction in the first paragraph substantially sets forth the ordinance under which the case was submitted.

The second paragraph requires the jury to find that respondent was riding in an automobile which was being operated upon the northbound streetcar track on Grand Avenue at or near its intersection of Forest Park Boulevard; that while upon this track, it was struck by a streetcar operated northwardly upon said Grand Avenue; that respondent was caused to sustain injuries as a result thereof; that the operator of the streetcar failed to keep a vigilant watch for the automobile on the northbound track; that the operator of the streetcar failed to stop the streetcar in the shortest time and space with safety to the streetcar and passengers upon the first appearance of danger to respondent; that if he failed to so stop he was negligent; that respondent was caused to be injured by reason of such negligence; and it directed a finding for respondent upon the jury's affirmatively finding the above facts.

Appellant first contends that this instruction is erroneous in that it is an abstract statement of a principle of law failing to hypothesize the facts essential to a finding of the violation of the vigilant watch

ordinance or of the negligence of appellant, but admits that abstractly it is correct.

Assuming without deciding this to be true, and, also, if true that it would constitute error, we do not think appellant was prejudiced by the giving of this instruction for the reason that under appellant's own evidence the jury could find that appellant's motorman violated the vigilant watch ordinance.

Appellant's motorman testified that he first saw the automobile in question when it swerved out 15 to 20 feet behind a southbound automobile that was stopped at the stop sign, and that the automobile in which respondent was a passenger was headed and continued in a southeast direction. He also testified that at that time the streetcar was at the north curb line of the center parkway of Forest Park Boulevard, going 15 to 20 miles an hour, possibly 17 miles an hour. If this is true, then, according to a plat introduced by appellant, the streetcar was at least 79 feet, 9 inches from the automobile when the motorman first saw the automobile. He further testified that when he first saw the automobile in the path of his streetcar, he threw on the emergency brakes. If he did, then under his own evidence, he could have stopped the streetcar before it got to a point of collision because he further testified that he could have stopped the streetcar going .15 miles an hour in 50 to 60 feet, at 17 miles an hour in 60 to 70 feet and at 20 miles an hour in 70 to 80 feet. Since he testified that the automobile continued in a southeasterly direction, the jury could find that even under appellant's evidence the collision would have been averted. Therefore, if the jury believed either appellant's witnesses or respondent's witnesses in regard to speed, distances and the time required to stop the streetcar, it would be compelled to find that the motorman violated the vigilant watch ordinance. So appellant could not be prejudiced by the giving of this instruction.

█ Appellant also contends that the instruction assumes that the motorman of appellant saw or could have seen the automobile in which respondent was a passenger.

In discussing this point, appellant says in his brief, ''The important thing is not whether there was a duty to keep a vigilant watch, that is clear from the ordinance and fairly stated in paragraph 1 of plaintiff's (respondent's) Instruction No. 1. The important thing was, could the automobile in which plaintiff (respondent) was riding have been seen in time to avoid the collision if a watch had been kept.'' We have just shown that under appellant's own evidence, the streetcar could have been stopped in time to avoid the collision after the time the motorman admits seeing the automobile. Moreover, this instruction required the jury to affirmatively find ''that the operator of said streetcar failed to keep a vigilant watch for the automobile.'' We think this is equivalent to saying that the motorman could have seen the automobile if he had kept a vigilant watch.

Respondent's Instruction No. 1, after directing a verdict, ends with the following, "and this is true even though you ·may further find and believe from the evidence that the operator of the automobile, in getting his said automobile upon said northbound tracks was guilty of negligence, which directly contributed to the negligence, if any, of the defendant, as aforesaid."

· Appellant contends that this part of the instruction conflicts with its Instruction No. 2, which is a sole cause instruction.

Appellant relies strongly upon our case of Smithers v. Barker, 341 Mo. 1017, 111 S. W. 2d 47. The instruction in that case contained the following: "And * * * this is· so, even though you should find and believe from the evidence, that plaintiff did not exercise due care for his own safety, and was, or was not, then and there drunk and negligent, in getting himself into the aforesaid position of * * * peril, if any, at said time and place."

We held that this broad language conflicted with a proper sole cause instruction for the reason that it would eliminate either sole cause negligence or contributory negligence. This instruction only eliminates the contributory negligence of the driver of the automobile in question and does not conflict with the sole cause Instruction No. 2. Kick v. Franklin, 345 Mo. 752, 137 S. W. 2d 512; State ex rel. Snider v. Shain, 345 Mo. 950, 137 S. W. 2d 527; Bowman v. Standard Oil Co. of Indiana, 350 Mo. 958, 169 S. W. 2d 384. It plainly states that, if the negligence of· the driver of the automobile contributed to the negligence of appellant, then the jury should find for respondent. That is the law. It could not possibly be interpreted that if respondent's injuries were caused solely by the negligence of the driver of the automobile, the jury should find for respondent.

Appellant contends that respondent's instruction is further erroneous because it does not negative appellant's defense that respondent's injuries were caused by the sole negligence of the driver of the car in which she was a passenger. Appellant frankly admits that an affirmative defense would not have to be negatived in a plaintiff's recovery instruction, but since we held in the case of Janssens v. Thompson, 360 Mo. 351, 228 S. W. 2d 743, that a sole cause defense "is not an affirmative defense but 'merely a denial of plaintiff's cause of action,' " it should be negative. It is true a sole cause defense is not a confession and avoidance, yet either it or any affirmative defense will defeat plaintiff's right to recovery. We see no merit in this contention.

Appellant's last assignment is that the court erred in giving Instruction No. 4. This instruction reads as follows:

"Under Instruction No. 2 the Court has submitted to you the issue of sole cause. Now, as to such issue of sole cause and such instruction, you are instructed that if you find and believe from the evidence that the operator of the automobile in which plaintiff was riding was

negligent as submitted to you in the other instructions of the court, and if you further find from the evidence that the defendant, St. Louis Public Service Co., was negligent, as submitted to you in other instructions of this Court, and if you further find from the evidence that such negligence of the defendant, St. Louis Public Service Co., if any, and such negligence of the operator of the automobile in which plaintiff was riding, if any, directly concurred and combined in causing the collision and the injuries to the plaintiff, if any, then you will find the issue of sole cause in favor of the plaintiff, Mary Abernathy, and against the defendant, St. Louis Public Service Co.''

Appellant says that this instruction is self-contradictory, illogical and an incorrect statement of the law. It bases its criticism of the instruction on that part which says ''that if you find and believe from the evidence that the operator of the automobile in which plaintiff was riding was negligent *as submitted to you in the other instructions of the court*,'' for the reason that there is no other instruction which defines the negligence of the driver of the automobile. In this appellant is mistaken; Instruction No. 6, given at appellant's request, stated facts about the operation of the automobile by its driver, and if the jury found these facts to be true, its verdict must be for appellant.

Appellant next contends that this instruction withdrew its sole cause defense. With this we do not agree. A mere reading of this instruction shows that it required the combining of appellant's negligence directly with the negligence of the operation of the automobile before there could be a verdict for respondent. We approved a similar instruction in the case of Hollister v. A. S. Aloe Co., 348 Mo. 1055, 156 S. W. 2d 606.

Lastly, appellant contends this instruction is further erroneous because when read with the ''even though'' clause of respondent's Instruction No. 1 it places undue emphasis on this subject. We have already held there was no error in this clause in Instruction No. 1. Respondent would have been entitled to this clause even if appellant had not requested a sole cause instruction. Instruction No. 4 is a converse of appellant's sole cause instruction and is the only instruction that is. This contention is without merit.

The almost identical instruction was approved by this court in the case of Baker v. Kansas City Public Service Co., 353 Mo. 625, 183 S. W. 2d 873.

It follows from what we have said that the judgment of the trial court should be affirmed. It is so ordered. All concur.