Jackie THALLER, Plaintiff-Respondent,

v.

SKINNER & KENNEDY COMPANY, a Corporation, Defendant-Appellant.

No. 46781.

Supreme Court of Missouri,

En Banc.

July 14, 1958.

Moser, Marsalek, Carpenter, Cleary, Jaeckel & Hamilton, Byron G. Carpenter, Parks G. Carpenter, St. Louis, for appellant.

Marvin G. Marshall, St. Louis, William L. Mason, Jr., St. Louis, for respondent.

DALTON, Chief Justice.

Action for damages for personal injuries alleged to have been sustained by plaintiff on December 8, 1954, by reason of defendant's negligence, when defendant's 1953 International truck collided with the rear

of plaintiff's 1949 Pontiac automobile. According to plaintiff, the right front portion of the truck struck the left rear fender and tail light of plaintiff's automobile when she stopped at an electric traffic signal at the intersection of Twelfth and Market Streets in the City of St. Louis. Verdict and judgment were for plaintiff for $10,000. Thereafter, after the plaintiff had entered a remittitur in the sum of $6500, the defendant's motion for new trial was overruled and a new judgment was entered for plaintiff for $3500. Defendant appealed to the St. Louis Court of Appeals. Respondent filed no brief in that court and the cause was submitted on the record and appellant's brief. The court reversed the judgment, holding that plaintiff failed to make a case for the jury. Thaller v. Skinner and Kennedy Co., Mo.App., 307 S.W.2d 734. On the order of this court, the cause has been transferred here and we shall review the record and determine the cause as if on original appeal to this court. Art. V, Sec. 10, Const. of Mo.1945, V.A.M.S.

The petition upon which the cause was tried charged that, after plaintiff's automobile was caused to stop at an electric stop signal on Market Street in St. Louis, it was violently struck in the rear by defendant's truck and that the defendant negligently and carelessly allowed its said truck to run into and collide with the rear end of plaintiff's automobile and thereby caused plaintiff to be injured.

Defendant, by its answer, admitted the fact of the collision and that the operator of the truck was its employee, but denied other allegations and charged that plaintiff's injuries, if any, were the result of her own carelessness and negligence directly contributing thereto.

After all of the evidence was in, the plaintiff submitted her cause to the jury on the following basis, to wit, that plaintiff brought her automobile to a stop "in a normal and regular manner" pursuant to an electric signal at the intersection of Twelfth and Market; that after her automobile "had remained stationary for some period of time" it was struck at the rear by defendant's truck and she was injured; and "that on said occasion the defendant failed to exercise the highest degree of care to keep a careful watch and lookout ahead and laterally of its said truck and failed to timely stop its said truck, and that such failure directly caused the collision * * *," and plaintiff's injuries.

Appellant assigns error on the court's action in refusing to direct a verdict for defendant at the close of all the evidence and in refusing to grant defendant's after trial motion to vacate the judgment and enter judgment for defendant. The grounds assigned in the motions were that the evidence wholly failed to show a claim on which relief could be granted and that plaintiff was guilty of contributory negligence as a matter of law barring recovery.

█ In determining the issues presented we will consider only the negligence submitted to the jury by plaintiff's instructions upon which the verdict was returned. Guthrie v. City of St. Charles, 347 Mo. 1175, 152 S.W.2d 91, 92(5).

It is appellant's theory that plaintiff's testimony on cross-examination was in "irreconcilable conflict", in essential respects, with her testimony on direct examination and that such testimony must be considered as final and controlling, because there was no explanation, retraction or qualification of the "directly opposed" prior statements concerning facts essential to the cause of action submitted.

██ In determining the issue of submissibility, we must consider the evidence in a light favorable to plaintiff and give her the benefit of all favorable evidence and all favorable inferences therefrom. We shall disregard defendant's evidence, unless it aids the plaintiff's case and we shall also disregard all evidence as to matters affecting merely the credibility, weight and value of plaintiff's evidence, except as necessary to determine the issues

presented here. Since the plaintiff is bound by her own personal testimony, we must review all of the essential portions of it, favorable and unfavorable, since appellant contends that her unfavorable testimony on cross-examination is controlling over her prior favorable testimony and defeats recovery.

On December 8, 1954, about 4:15 p. m., plaintiff was operating a 1949 Pontiac automobile south on Fifteenth Street in the City of St. Louis and she turned left on Market Street, where she proceeded eastward in the south traffic lane and adjacent to the curb lane on which cars were parked on the south side of Market Street. Market Street is a four lane trafficway with a lane on each side where cars may be parked. Plaintiff intended to go south on Twelfth Street. While proceeding on Fifteenth Street, plaintiff had killed her engine when the defendant's truck had pulled into the street in front of her and she had been required to stop to avoid hitting it. There was no conversation between the parties at the time, but plaintiff was slightly irritated by the incident. She then started her car "and followed and turned left on Market."

Cars were parked along the south side of Market Street from Fifteenth Street to within approximately one block of Twelfth Street. *On direct examination* plaintiff stated that she got into the curb lane approximately one block from Twelfth Street, immediately after passing the line of parked cars, and that, as she came to within 30 to 45 feet of the intersection, the traffic light turned from green to yellow and she stopped her automobile. *On cross-examination* plaintiff said that when she came to within 30 to 35 feet of the intersection, she pulled into the right hand curb lane, and that the light was in the process of turning from green to yellow as she did so. She also said she got into the curb lane 40 to 50 feet from Twelfth Street. Plaintiff traveled 20 or 25 miles per hour as she proceeded east on Market Street, but was going only 20 miles per hour when the light changed to yellow. At that time plaintiff already had her foot on the brake and she brought her car to a stop. There were pedestrians standing on the corner waiting to cross the street when the light changed. The weather was misty and foggy, and plaintiff had her parking lights and her windshield wipers operating.

Plaintiff's testimony further tended to show that, after the incident on Fifteenth Street, she had gotten ahead of defendant's truck ("after I turned onto Market, he was still in the other lanes, and I swung over into the right hand lane.") She was out in front of the truck and did not see it at the time she turned into the curb lane, but said: "It was in the middle part of the street to my ability (sic) in the other traffic." She was questioned about prior deposition testimony to the effect that she "looked in the rear view mirror to see where he was at * * * To see whoever it was that cut me off back there in that truck before." She answered: "That is right, because he was in the middle lane of traffic where there were heavy traffic and I was in a sparsely traveled lane." She further testified: "Q. So as you approached Twelfth Street you did look back to see where that guy was that cut you off? A. Not exactly where he was at. I was looking to see where anyone that might be behind me was at."

When plaintiff looked in her rear-view mirror before turning into the curb lane of Market Street, she saw no traffic behind her. She also said there wasn't anyone for her "to cut into" in the curb lane. When plaintiff came to a complete stop, after she was in the curb lane, she again looked into her rear-view mirror and saw defendant's truck coming over into the curb lane. She testified: "I glanced up in my mirror and *I saw this truck coming over into the lane to make a right hand turn* and I saw he couldn't stop because it was slippery.

"Q. And what happened then? A. Well, that is when he struck my left rear fender.

"Q. And with what part of his truck did he strike your fender? A. I think it was his right front." (Italics ours.)

There was no damage to the truck. Plaintiff had not, to her knowledge, "cut off" the truck and there wasn't anyone around when she turned into the curb lane.

While defendant's truck driver, a witness for defendant, testified that he turned from the right traffic lane of Market Street into the right turn or right curb lane after he passed the parked cars and a bus, he did not indicate how far the cars were from Twelfth Street, and while he testified that plaintiff pulled over from his left into the curb lane a truck and a half's length ahead of him, and stopped her automobile when the signal light turned caution, and stopped it *cater-cornered on the corner,* "pointed southeast", still he said that his *right* front bumper struck the back of plaintiff's automobile and damaged "the *right* back light and back fender." Plaintiff, thereafter, offered in evidence a photograph of a 1949 Pontiac automobile showing a damaged *left* rear fender and defendant's counsel withdrew his prior objection to the identity of the exhibit and consented to its admission in evidence. Defendant's witness also testified that prior to the collision he was traveling 15 to 17 miles per hour, "no faster", and that he did not apply his brakes until he was a truck's length from plaintiff's automobile. He said he first saw plaintiff's automobile as plaintiff "was pulling in off my left, crossing in front of me." He could not estimate the distance of his truck from the right curb of Market at the time of the collision, but said: "I think there was one car out in the left hand lane, out to make a left turn there on Twelfth Street off of Market." The truck in question was a ton and a half, stake-body delivery truck and was empty.

Appellant relies, as stated, on the unexplained conflict between plaintiff's testimony on direct examination and her testimony on cross-examination *as to how far she was from Twelfth Street when she entered the right curb lane on Market Street,* but we think that conflict immaterial to any of the issues here presented, since the place where plaintiff entered the right curb lane of Market Street is not a decisive issue, as hereinafter indicated. Appellant also refers to the testimony of defendant's witness that he was driving in the extreme right hand or curb lane and plaintiff turned into that lane ahead of him. On the basis of defendant's evidence, appellant contends that "defendant's vehicle did not become the 'following vehicle' until the last critical moment before the collision, or * * * until such time as a collision was unavoidable." Appellant reviews the other evidence in a light favorable to defendant and insists that "there was no showing of any actionable negligence on the part of the defendant and no evidence to support the only pleaded assignment of negligence based on the so-called 'rear end collision doctrine.' " Appellant cites Durmeier v. St. Louis County Bus Co., Mo.Sup., 203 S.W.2d 445; and Hughes v. St. Louis Public Serv. Co., Mo. App., 251 S.W.2d 360, 362, which do not aid appellant. No issue as to any departure was presented below and none is presented on appeal. The facts attending the collision came in without objection. See Section 509.500 RSMo 1949, V.A.M.S.; Kraus v. Kansas City Public Serv. Co., Mo.Sup., 269 S.W.2d 743, 746. Appellant further contends that there was no evidence to support the assignment of negligent failure to timely stop the truck, because "there was no evidence as to the distance within which the truck could have been stopped and there was no evidence that the defendant's driver could have stopped the truck after first appearance of danger * * *" and reference is made to the slippery condition of the street. Appellant also contends that plaintiff was guilty of contributory negligence, as a matter of law, in that she failed to exercise the highest degree of care in cutting in front of defendant's truck and bringing her automobile to a stop so closely in front of the truck that it could not stop before

striking her automobile. Again, appellant relies on defendant's evidence to the exclusion of plaintiff's evidence. An instruction on contributory negligence based on the truck driver's testimony was subsequently given when the cause was submitted to the jury.

■ It was the duty of the operator of defendant's truck to exercise the highest degree of care in the operation of said truck and to keep a lookout ahead and laterally ahead in the direction in which the truck was moving in order to avoid injury and damage to others. Wright v. Osborn, 356 Mo. 382, 201 S.W.2d 935; Brown v. Toedebush, 354 Mo. 611, 190 S.W. 239, 240; Patton v. Hanson, Mo.Sup., 286 S.W.2d 829, 831; Sec. 304.010 RSMo 1949, V.A.M.S. "Where one is charged with the duty to look and to look is to see, he must be held to have seen what looking would have revealed." Smith v. Kansas City Public Service Co., 328 Mo. 979, 43 S.W.2d 548, 553; Frandeka v. St. Louis Public Serv. Co., Mo.Sup., 234 S.W.2d 540, 546. "It was the duty of defendant to keep a careful watch ahead for other vehicles on the highway; and to fulfill this duty he was required to look in such an observant manner as to enable him to see what a person in the exercise of the highest degree of care for the safety of himself and others would be expected to see under similar circumstances." Chenoweth v. McBurney, 359 Mo. 890, 224 S.W.2d 114, 118(8); Faught v. Washam, 365 Mo. 1021, 291 S.W.2d 78, 82.

■ Considering the evidence in a light favorable to plaintiff and giving her the benefit of all favorable inferences, we think the jury could reasonably find the facts to be that, as plaintiff proceeded east in the right traffic lane of Market, at 20 or 25 miles per hour and approached Twelfth Street, the defendant's truck was not immediately behind her automobile, nor to her right, but was in the left east-bound traffic lane of Market Street to plaintiff's left; that, when plaintiff passed the parked cars in the east curb lane of Market, she looked in her rear vision mirror and determined that there was no traffic immediately behind her, nor to her right; that she then turned right into the right curb lane or "right turn lane" of Market Street and brought her automobile to a stop when the electric traffic signal on Twelfth Street changed from green to caution; that on these facts it was wholly immaterial whether she turned into the curb lane of Market Street 30, 35, 40 or 50 feet from Twelfth Street or almost a block from Twelfth Street; that it took plaintiff some appreciable time to bring her automobile from a speed of 20 miles per hour to a complete stop at Twelfth Street; that there was nothing to obstruct the truck driver's view of plaintiff's automobile; that, after plaintiff had made a complete stop at Twelfth Street, defendant's truck, which had not been directly behind her, but was in a traffic lane to her left, turned to his right and entered the curb lane behind plaintiff's automobile; that, since plaintiff had completely stopped her automobile before the truck began its turn to the right to enter plaintiff's traffic lane, the truck driver could have seen plaintiff and could have proceeded directly ahead and have avoided striking plaintiff's automobile, and particularly so, since both drivers agree that the *right* front bumper of the truck struck the rear of the automobile and since plaintiff's exhibit, a photograph, and plaintiff's testimony showed that the damage to plaintiff's automobile was, not to the back bumper, but to the *left rear fender and tail light*; and the jury could further reasonably find that, since the truck was empty and was proceeding at only 15 to 17 miles per hour and both vehicles had been proceeding in the same direction, the truck driver could have avoided the collision with plaintiff's automobile if he had maintained the lookout required. We think the evidence was sufficient and substantial and entirely adequate to support the charge of negligent failure to keep a lookout which was one of the charges submitted to the jury as a direct and proximate cause of the collision and plaintiff's injuries.

In Fortner v. St. Louis Public Serv. Co., Mo.Sup., 244 S.W.2d 10, 14, 15, the court said: "In a primary negligence case it should be sufficient if a jury is authorized to find that a defendant was negligent specifically in failing to keep a proper lookout * * * and that such negligence directly caused plaintiff's injuries. * * * We think it unnecessary to submit the further hypothesis that by keeping a proper lookout defendant could have seen plaintiff." And see Nelson v. Evans, 338 Mo. 991, 93 S.W.2d 691, 693(2); Abernathy v. St. Louis Public Serv. Co., 362 Mo. 214, 240 S.W.2d 914, 919(14); Lanio v. Kansas City Public Serv. Co., Mo.Sup., 162 S.W.2d 862, 867 (8); Brown v. Toedebush Transfer, supra, 190 S.W.2d 239, 240.

Considering the evidence in a light favorable to plaintiff, we find no support for appellant's contention that plaintiff was guilty of contributory negligence as a matter of law. The contention is overruled.

We have noted that in plaintiff's principal instruction there was a conjunctive submission of two assignments of negligence, to wit, negligent failure to keep a lookout and negligent failure to stop, but since there was substantial evidence to support one of these assignments of negligence, any inadequacy in the evidence to support the other assignment of negligence would not be a sufficient basis for directing a verdict against plaintiff on the ground that no case was made for the jury, hence we need not determine the sufficiency of the evidence to make a submissible case of negligent failure to stop.

The court did not err in refusing to direct a verdict for defendant or in overruling defendant's after trial motion to enter judgment for defendant.

Appellant further contends that the court erred in giving instruction No. 1 for plaintiff, because it "gave the jury a false standard of care in connection with the behavior of plaintiff" and permitted a recovery against defendant upon a finding that plain-

tiff "brought her automobile to a stop in a normal and regular manner at or near the intersection of Twelfth and Market Streets." Appellant argues that the law required plaintiff to exercise the highest degree of care in bringing her automobile to a stop; and that "the jurors should not have been permitted to use their individual judgments as to what might or might not have constituted a 'normal and regular' stop."

It was of course the plaintiff's duty to operate her automobile "in a careful and prudent manner, and * * * exercise the highest degree of care." Section 304.010 RSMo 1949, V.A.M.S.; Burlingame v. Landis, 362 Mo. 523, 242 S.W.2d 578, 580. The same requirement concerning the exercise of the highest degree of care applies as well to a plaintiff-motorist for his own safety as to a defendant-motorist for the safety of plaintiff. Jackson v. Southwestern Bell Telephone Co., 281 Mo. 358, 219 S.W. 655, 657(1). The word "operating" or "driving" of a motor vehicle within the statute requiring the highest degree of care encompasses all acts necessary to be performed in the movement of a motor vehicle from one place to another or fairly incidental to the ordinary course of its operation, including not only the act of stopping en route for purposes reasonably associated with transit, but all acts which are reasonably connected with entering the vehicle at point of departure and alighting therefrom at destination. Teters v. Kansas City Public Serv. Co., Mo.Sup., 300 S.W.2d 511, 516(9). The test of sufficiency of the warning by a motorist that he is about to stop is whether the warning is adequate and timely. Knox v. Weathers, 363 Mo. 1167, 257 S.W.2d 912, 918(15); White v. Rohrer, Mo.Sup., 267 S.W.2d 31, 34(4).

It is apparent that plaintiff's instruction No. 1 was erroneous in directing a recovery by plaintiff on the basis of the facts stated in instruction No. 1, and which failed to require the exercise of the highest degree of care on her part. Burlingame v. Landis,

supra, 242 S.W.2d 578, 581. And see Faught v. Washam, supra, 291 S.W.2d 78, 81. In determining whether the instruction in the form given was clearly prejudicial to defendant we need only refer to instruction No. 2 given at defendant's request and based on the testimony of defendant's witness. This instruction submitted plaintiff's alleged contributory negligence, as follows: "That if you find and believe from the evidence that on the occasion in question, both plaintiff and defendant were driving their cars eastwardly on Market Street, and that defendant was driving in the lane nearest the south curb of Market Street, and plaintiff was driving in the lane immediately north of the lane in which defendant was driving, and if you further find that as she came near to Twelfth Street, plaintiff caused the course of her automobile to be altered so as to cross into the right hand lane or curb lane of Market Street, and in front of the car which defendant was driving, and if you further find that *after crossing to a position in front of defendant's automobile, plaintiff brought her automobile to a stop at or near the intersection of Market and Twelfth Street, and that in so doing she failed to exercise the highest degree of care in the operation of her automobile and was negligent,* and that such negligence on the part of plaintiff directly contributed to cause the collision mentioned in the evidence, then plaintiff is not entitled to recover * * *." (Italics ours.)

 Since instruction No. 1 required an erroneous and false standard with reference to plaintiff's duties in bringing her automobile to a stop at the intersection and since it permitted a recovery upon a finding directly in conflict with defendant's instruction No. 2, which instruction submitted a finding for defendant, if plaintiff had failed to exercise the highest degree of care in bringing her automobile to a stop at the intersection and thereby directly and proximately contributed to cause the collision and injury, we must hold that instruction No. 1 was prejudicially erroneous.

The correctness of instruction No. 2 is not before us for determination, but those interested may refer to Tucker v. Blankenmeier, Mo., 315 S.W.2d 724.

Other alleged errors have been briefed by the parties, but they are not likely to reoccur upon another trial of the cause, and it is unnecessary to consider them.

The judgment is reversed and the cause remanded.

All concur, except WESTHUES and LEEDY, JJ., who dissent.