CONTINENTAL–ST. LOUIS CORPORA-
TION, Plaintiff-Appellant,

v.

RAY SCHARF VENDING COMPANY, Inc.,
Defendant-Respondent.

No. 32163.

St. Louis Court of Appeals.

Missouri.

Feb. 15, 1966.

Baron & Freed, Charles B. Baron, David Baron, St. Louis, for plaintiff-appellant.

Hale W. Brown, Kirkwood, for defendant-respondent.

BRADY, Commissioner.

The appellant instituted an action on an account against the respondent whereby it sought to recover $11,114.26 and interest thereon. Respondent denied owing this amount and, by way of a counterclaim, sought recovery from the appellant for $12,000.00 it alleged it lost through the fraud of the appellant acting through the manager of the appellant's office in St. Louis, Mo. The trial court directed a verdict in favor of the appellant on its petition in the amount of $12,970.34. The jury returned a verdict in favor of the respondent on his counterclaim in the amount of $14,-134.00. The trial court then entered a judgment in favor of defendant for the sum of $1,163.66. The respondent filed no appeal, and we have before us only the appellant's contentions with regard to the verdict on the counterclaim. We will hereafter refer to these parties by their designation in the trial court.

The parties here involved are engaged in the owning and operating of coin operated vending machines in Missouri. The defendant first began dealing with the plaintiff about a year and a half prior to the occurrence of the events which form the basis for the defendant's counterclaim. Plaintiff's St. Louis office was then being managed by one Borden who by the time pertinent to this appeal had been replaced by Louis Saladino. At some undetermined date in May of 1960 Scharf, president of the defendant, had several dealings with Saladino. On these occasions Scharf had purchased certain items of equipment and there were also three to five occasions where the purchase of individual "stops" or locations of a vending machine was involved. The most money involved in any one of these transactions was $2,200.00 which Saladino collected for the plaintiff.

In October of 1961 Scharf had a discussion with Saladino at the plaintiff's office concerning the purchase of the machines and route of the Automatic Sales Company, another vending company. In essence the evidence was that Saladino showed Scharf a list of over 400 stops operated by Automatic, the purchase price of which Saladino gave as $150,000.00. The defendant was to take twenty-five per cent in return for the payment of $37,500.00. Saladino explained that Continental was having trouble with another vending company at that particular time and was in no position to make the purchase from Automatic in their own name.

Scharf agreed to the purchase in defendant's name. Saladino also told Scharf not to contact anyone at Automatic as he, Saladino, was handling the transaction. Scharf complied. Scharf testified that Saladino told him: " * * * he had to go to New York to make these arrangements, and he had an attorney in Clayton that was drawing the papers up, and he did leave and go to New York a couple of days and came back and contacted me again and said that the deal was all okay'd by the New York office, he had the authority to complete the deal and we went ahead on the arrangements." There is no evidence that Scharf made any inquiry of anyone at the Continental home office in New York or anyone in the St. Louis office other than Saladino. Scharf was to give Saladino a check for $12,000.00 as part of defendant's total payment of $37,500.00. Scharf's testimony was that they discussed how the check was to be made out and that Saladino told him to make the check payable to Saladino because he was negotiating the deal with Automatic and again gave the reason for not putting plaintiff's name on the check as being necessary because of the problems that Continental was having at that time. Scharf personally wrote in the name of Louis Saladino as payee on the check. Saladino then gave Scharf a note which, after reciting the amount of $12,000.00 and the date, reads as follows: "On demand I promise to pay to the order of Ray Scharf Vending Co. Inc. —————— Dollars at Kirkwood, Mo." It was signed by Louis Saladino. The defendant alleged that Saladino endorsed the note on the back of it and above his signature placed the name "Continental-St. Louis Corporation." These are the only documents of any nature Scharf saw during the entire transaction.

Scharf's further testimony was that he had never bought a route before except the one he was operating at the time of this transaction and admitted he considered it unusual to receive a note when he was buying things. About ten days after this transaction took place Scharf found out there was no route for sale from Automatic and that Saladino had disappeared taking with him the $12,000.00. Scharf also testified that as an officer of the defendant corporation he was familiar with the fact that resolutions by the board of directors of corporations were often required for financial dealings and that he never asked for any corporate resolution from plaintiff with regard to this transaction. There is no evidence that plaintiff received any part of the $12,000.00 nor any evidence that anyone but Saladino participated in the working of this scheme or benefited from it.

◼ Among the many allegations of prejudicial error presented by the plaintiff is the contention the trial court erred in overruling plaintiff's motion for a directed verdict offered at the close of all the evidence. In consideration of this allegation of error we are to view the evidence in the light most favorable to the defendant, granting it the benefit of all reasonable inferences to be drawn therefrom, and we are to determine whether the defendant made a submissible case on its counterclaim considering the issues submitted. Thaller v. Skinner & Kennedy Co., Mo.App., 307 S.W.2d 734, transf. Mo., 315 S.W.2d 124; Taylor v. Hitt, Mo.App., 342 S.W.2d 489; La Tour v. Pevely Dairy Co., Mo.App., 349 S.W.2d 436; Kagan v. St. Louis Public Service Co., Mo.App., 360 S.W.2d 261; Adler v. Ewing, Mo.App., 347 S.W.2d 396. In the instant case the defendant submitted its counterclaim under an instruction which first informed the jury they were not required to find the plaintiff actually knew of the arrangement between Saladino and the defendant nor need they find that the plaintiff actually received the money the defendant paid Saladino. The instruction then required the jury to find each part of Saladino's fraudulent scheme although there was no dispute in the evidence about any hypothesization contained in the instruction as to how Saladino perpetrated this fraud. The jury was then required to find that neither Saladino nor the plaintiff conveyed the one-fourth interest in the Automatic

route to the defendant nor refunded to the defendant the $12,000.00. Again there had been no dispute regarding these matters. The defendant's verdict directing instruction closed with the following hypothesization: " * * * and if you further find that from Ray Scharf's previous dealings with Louis Saladino, Ray Scharf reasonably believed that Louis Saladino had authority to act for plaintiff in the manner aforesaid, then your verdict should be for the defendant, Ray Scharf Vending Company, Inc. * * * "

When a third person is dealing with an agent, the agent's scope of authority may go beyond the actual authorization conferred upon him by his principal and include also that which has apparently been delegated to him. That is to say, the agent may also have "apparent" or "ostensible" authority; i. e., that authority which though not actualy granted to him by his principal, the principal knowingly permits the agent to exercise or which the principal holds the agent out as possessing. The rule is stated in 3 Am.Jur.2d, Agency, § 74, p. 477, as follows: "Stated inclusively, then, the rule is that if a principal acts or conducts his business, either intentionally or through negligence, or fails to disapprove of the agent's act or course of action so as to lead the public to believe that his agent possesses authority to act or contract in the name of the principal, such principal is bound by the acts of the agent within the scope of his apparent authority as to any person who, upon the faith of such holding out, believes, and has reasonable ground to believe, that the agent has such authority, and in good faith deals with him." The Restatement is to the same effect. Restatement of the Law, Second, Agency, § 8, p. 30, reads as follows: "Apparent authority is the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with the other's manifestations to such third persons."

It is to be noted that both the Restatement and American Jurisprudence refer to the principal's conduct or manifestations and not to those of the agent. It is well settled that apparent or ostensible authority is not to be determined from the acts or statements of the agent but from the acts, statements or other manifestations of the principal. Apparent authority cannot be created by the agent's own conduct and statements and neither can it be enlarged in that manner. 3 Am.Jur.2d, Agency, § 75, p. 479. In that same section at page 477 it is stated that there are three prerequisites to the establishment of apparent or ostensible authority. It must be established (3 Am. Jur.2d, Agency, § 75, pp. 477–478) " * * * (1) that the principal has manifested his consent to the exercise of such authority or has knowingly permitted the agent to assume the exercise of such authority; (2) that the third person knew of the facts and, acting in good faith, had reason to believe, and did actually believe, that the agent possessed such authority; and (3) that the third person, relying on such appearance of authority, has changed his position and will be injured or suffer loss if the act done or transaction executed by the agent does not bind the principal. * * * "

In the instant case proof of the first requirement is missing from the evidence. There is no evidence upon which the jury could find the plaintiff manifested its consent to the exercise of the authority to arrange and conclude the purchase of Automatic by Saladino or that it knowingly permitted Saladino to assume the exercise of such authority. The evidence is that plaintiff knew nothing of Saladino's scheme and neither does it appear that he had ever been authorized to arrange or conclude such transactions for plaintiff in the past. What does appear from this record is that plaintiff had allowed Saladino to sell the defendant some cigarette and music vending machines as well as certain individual "stops" and, on behalf of plaintiff, to receive the monies defendant paid on these occasions.

It will be noted the instruction specifically limits those items of evidence from which the jury could find Scharf "reasonably believed" Saladino had authority to so act for the plaintiff to those items of evidence relating to Scharf's "previous dealings." It is therefore apparent that defendant's theory is the fact Scharf had dealt with Saladino on the occasions above noted constituted sufficient proof to authorize submission to the jury of whether Scharf reasonably believed Saladino had the authority to act for plaintiff with respect to arranging for and concluding their joint purchase of Automatic's route of over 400 stops together with its equipment. There are several reasons defendant's theory is without merit. In the first place the vast difference between the nature of the action Saladino proposed with reference to Automatic and the very limited scope of Saladino's previous dealings with Scharf would negate any contention that by its action with regard to their previous dealings the plaintiff manifested its consent to Saladino's acting for them with regard to the purchase of Automatic's route. The appearance of authority in one respect does not extend to other acts which are not of a like nature. 3 Am. Jur.2d, Agency, § 75, p. 478 and cases cited at Note 7. Saladino had previously been selling the plaintiff's own property to Scharf and on an occasional and individual basis. That is a very different thing from the proposal he made to Scharf with regard to Automatic by which, had the proposal been genuine, Saladino would have been arranging for Scharf and plaintiff to purchase the route and equipment of another company and for Scharf to become a partner with the plaintiff in the operation and ownership of the route and equipment to be purchased.

■ In the second place the defendant's own evidence shows conclusively that Scharf knew that this was not a usual transaction or one which Saladino had authority to handle by virtue of his position with the plaintiff. Scharf himself testified that Saladino told him that it was necessary to go to New York (where Scharf knew plaintiff's main offices were located) to make the arrangements for this purchase and that upon his return Saladino contacted Scharf and informed him " * * * that the deal was all okay'd by the New York office, he had the authority to complete the deal * * *." Regardless of what had happened before that time, it is clear that thereafter Scharf had the burden of determining for himself the existence of Saladino's authority to act with reference to the contemplated purchase and had to exercise reasonable diligence and prudence in making that determination. 3 Am.Jur.2d, Agency, § 78 and cases cited at Note 10; see also § 80 and cases cited at Note 20. In the instant case, in spite of the fact that he had been told that the proposed deal required a trip to and approval by the home office, Scharf made no attempt to make any inquiry or to ascertain from some authoritative source whether Saladino had the authority to bind the principal. It is obvious from this record that the defendant dealt with Saladino purely and solely on the basis of Saladino's representations to Scharf regarding his authority. This was so even after Saladino himself indicated that his usual authority was not broad enough to cover this particular transaction and in spite of the fact that Scharf's own testimony shows that he was familiar with the fact that resolutions of the boards of corporations were often required with regard to financial dealings. Saladino was not even one of plaintiff's officers but only an agent, yet the defendant proceeded blindly, entranced by Saladino's own representations as to his authority. As has been stated earlier herein, apparent or ostensible authority cannot be created or enlarged by the agent's own statements or representations. The determining factor is the manifestations of the principal which would reasonably lead a third party dealing with the agent to conclude the agent in fact had the authority he stated he did. Such evidence is lacking from this record.

The judgment is reversed and the cause remanded to the trial court with directions

to enter its judgment in favor of the plaintiff and against the defendant in the sum of $12,970.34 plus costs.

PER CURIAM.

The foregoing opinion by BRADY, C., is adopted as the opinion of this court. The judgment is reversed and the cause remanded to the trial court with directions to enter its judgment in favor of the plaintiff and against the defendant in the sum of $12,-970.34 plus costs.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.