**PEPPER SOUND STUDIOS, INC.,**
**Plaintiff,**

v.

**Smith DUNN, Shelby McCallum, Gaylon Watson, d/b/a KMIS Radio Station, Portageville, Missouri, Defendants.**

**No. S67 C 56.**

United States District Court
E. D. Missouri,
Southeastern Division.

Sept. 3, 1969.

Cox & Cox, St. Louis, Mo., William A. Peterson, Jefferson City, Mo., Jerome Wallach, St. Louis, Mo., for plaintiff.

Linus E. Young, Portageville, Mo., and Radar & Grimm, Cape Girardeau, Mo., for defendants Smith Dunn and Shelby McCallum.

Roy W. McGhee, Jr., Piedmont, Mo., for defendant Gaylon Watson.

MEREDITH, District Judge.

## MEMORANDUM

This case was tried to the Court without a jury. The plaintiff is a Tennessee corporation with its principal place of business in Memphis, Tennessee. Defendants Smith Dunn and Shelby McCallum are residents of Kentucky; defendant Gaylon Watson is a resident of Missouri; and the amount in controversy exceeds $10,000. This Court has jurisdiction by virtue of diversity of citizenship.

Defendants Dunn and McCallum, residents of Benton, Kentucky, were the members of a partnership which owned radio station KMIS in Portageville, Missouri. In June 1964, they hired defendant Watson to become general manager of the radio station. In his capacity as general manager, Watson was to sell advertising, announce, write checks to meet the obligations of the station, and help the owners, Dunn and McCallum, make the radio station, which was deeply in

debt, a profitable operation. He was given no specific instructions as to what to do in his capacity as general manager, but he was not given any limitations on what he could do. He had no written set of instructions. The owners retained control over the operation to the extent that they received the cancelled checks written by Watson on either of the station's two bank accounts and made periodic trips to the station to check its operation. However, the day-to-day operations of the station were in the hands of Watson.

On December 18, 1964, Watson executed a contract on behalf of the defendant owners with Mars Broadcasting, Inc. (Mars subsequently merged with Pepper Sound Studios, Inc., the plaintiff in this case, which was the surviving corporation of the merger). Mars was to furnish station KMIS with certain materials, such as jingles and promotional devices, to use in its broadcasting and advertising operations. The station was to pay $2,700.00 for the use of these materials for five years and furnish Mars with 3,900 one-minute time spots to be used, upon request, for advertising by Mars. The $2,700.00 was represented by five promissory notes for $540.00, payable at a rate of $45.00 per month. The effective date of the contract was January 1, 1965, and it was to run for 260 weeks (five years).

In June of 1965 Watson left station KMIS to operate a station in Piedmont, Missouri. On July 1, 1965, Harry Moreland assumed the duties of general manager of KMIS. Moreland, under the direction of the owners, continued to make the $45.00 per month payments on the first of the notes for the balance of the year. On December 30, 1965, defendant Dunn wrote plaintiff a letter notifying plaintiff that the defendant intended to terminate the contract. On February 17, 1966, Moreland returned the materials to plaintiff under the cover of a letter which purported to cancel the contract. Plaintiff commenced this action for breach of contract for the value of the unused portion of the 3,900 one-minute

time spots at $2.00 per spot equaling $7,800.00 and for the value of the four remaining promissory notes, $2,160.00 plus $540.00 attorney's fees, or $2,700.00, for a total of $10,500.00.

■■ Defendants Dunn and McCallum deny that Watson was an agent for the purposes of signing a contract and promissory notes such as the ones involved in this action. It is the opinion of the Court that Watson was an agent of defendants Dunn and McCallum and that he had, at least, the apparent authority to obligate the station on the contract and notes. Watson, admittedly, was the general manager of the station. He ran all of the day-to-day business of the station, including the payment of the bills of the station. He was listed as general manager of the station in the current edition of the Standard Rate and Data Service (SRDS). The owners of the station lived in another state and made infrequent trips to the station. General managers of radio stations often sign contracts such as the one in this case. Apparent authority is created by appointing a person to a position, such as general manager, which carries with it generally recognized duties; and to those who know of the appointment there is apparent authority to do the things ordinarily entrusted to one occupying such a position regardless of unknown limitations which are imposed on that particular agent. Fielder v. Production Credit Ass'n., 429 S.W.2d 307 (Spr.Mo. App.1968); Wynn v. McMahon Ford Co., 414 S.W.2d 330 (St.L.Mo.App.1967); Continental-St.Louis Corp. v. Ray Scharf Vending Co., 400 S.W.2d 467 (St.L.Mo. App.1966); Restatement (Second) of Agency, § 27 Comment a and d, (1957). Therefore, Watson had the apparent authority to do those things general managers of radio stations normally do, including the signing of contracts such as the one involved in this case, and the defendants Dunn and McCallum are bound by his actions.

■ Defendants Dunn and McCallum breached the contract when they returned the materials to plaintiff in February

1966. The contract was for a term of five years under paragraph 10 of the agreement:

> "This lease is to start on 1 day of January, 1965, and will continue for 260 weeks."

Defendants' contention that the station had an option to terminate at the end of each year is based on paragraph 3 which states:

> " * * * If the station does not ship the production and promotion material back, the lease contract is automatically renewed for another year. If the station renews the service for five consecutive years, then all the production and promotion material does become the station's property."

This interpretation of paragraph 3 is in conflict with the plain language of paragraph 10 and the fact that Watson signed promissory notes for each year from 1965 through 1969 for a total of five years. Therefore, the Court will enter judgment for the plaintiff in the amount of $2,160.00 on the four outstanding notes of $540.00 each, plus attorney's fees in the amount of $540.00 as provided in the notes.

■ The evidence showed that of the 3,900 one-minute spots promised to plaintiff in the contract, defendants had furnished plaintiff with 290. The value of the remaining 3,610 spots has been disputed. Plaintiff contends that these spots should be valued by use of the conversion ratio in paragraph 4 of the contract:

> "A conversion of the above spot total to a cash credit based upon lowest rate per time classification as per published rates as in SRDS this date, may be exercised by MARS BROADCASTING, INC. in the event nighttime schedules and/or shorter length announcements are desired."

The lowest rate in SRDS for station KM IS is $2.00 per minute for one minute spots. Defendants contend that the measure of damages for the spots should be the fair market value. The evidence showed that the fair market value of one-minute spots was $1.00 each when over 100 spots were being sold at one time. The language of the contract lists two specific instances when the $2.00 per minute figure should be used: "in the event nighttime schedules or shorter length announcements are desired." This clause is not, by its own language, determinative of the value of a spot for all purposes in the contract. The wording limits it to two specific situations, neither of which has anything to do with damages. Plaintiff may purchase 3,610 one-minute spots for $3,610.00, therefore, $3,610.00 is all the benefit it would have received had the contract been fulfilled. It is the opinion of the Court that $3,610.00 is the proper measure of damages.

■ A judgment will be entered in favor of the plaintiff against the defendants Dunn and McCallum on the notes in the amount of $2,160.00 and $540.00 attorney's fees. In addition the amount of $3,610.00 will be added to the judgment for the defendants' failure to · provide 3,610 spots to plaintiff. The Court will enter a judgment in favor of defendant Watson against plaintiff. He is not personally liable on the contract. Defendants' motion to dismiss under Rule 41(b), F.R.Civ.P. will be overruled.