**J. O. SKATES and Audrey Skates, Respondents,**

v.

**PREFERRED FIRE INSURANCE COMPANY, Appellant.**

**No. 25703.**

Missouri Court of Appeals, Kansas City District.

June 5, 1972.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

Arlyn D. Haxton and Robert K. Dreiling, Kansas City, Dietrich, Davis, Burrell, Dicus & Rowlands, Kansas City, of counsel, for appellant.

Solbert M. Wasserstrom and Francis L. Roach, Kansas City, for respondents.

PER CURIAM.

For loss occasioned by the total destruction of their dwelling, respondents, the Skates, sued appellant, Preferred Fire Insurance Company, on its fire and extended coverage policy of insurance. The trial court found for Skates in the amount of $6,000.00 (the face amount of the policy) and for $1,350.00 interest to date of judgment, upon Count I of the petition. That count pleads, in abbreviation here, that Preferred issued its policy No. 308165 to Skates for a period from February 22, 1965 to February 22, 1966, through Higgins who signed it as general agent. Shortly prior to expiration of the policy Higgins mailed Skates a renewal notice of the policy calling for $24.00 renewal premium which was mailed to, accepted by and retained by Higgins. The fire occurred on March 13, 1966, for which Skates gave prompt and due notice to Preferred. It refused to pay the claim, and advised Skates "for the first time" that Higgins' agency had been cancelled about September 10, 1965, and he had been replaced by agent Smith. Upon this, Skates discovered that Higgins had placed a renewal order of the policy with Smith, who accepted it and never notified Higgins that the policy had not been put in effect. Recovery was sought upon the theory that Preferred had permitted and encouraged Skates to deal with Higgins as Preferred's agent, and they were fully entitled to rely upon Higgins' agency, and it was bound by his acceptance and retention of the renewal premium, it being further bound by Smith's accepting Higgins' order of renewal and Smith's failure to give any indication that insurance on Skates' property was not being renewed.

The case was submitted to the court upon answers of Preferred to interrogatories, depositions of Smith and Higgins, and upon an agreed statement of facts. At the inception of the policy, Preferred answered that Higgins was its agent and had authority to write insurance on its behalf, and that on September 10, 1965, it withdrew its authority to Ashwood Insurance Agency (under which name Higgins did business) and to Higgins. Preferred did not give notice to the Skates or to anyone else of any change or termination of its relationship to it.

J. O. Skates gave his deposition. He lived at 6808 Holmes in Kansas City, Missouri. In February, 1965, he called Higgins on the phone through a recommendation of someone to get fire insurance on an

old dwelling house, a 25 room mansion, at 7606 Indiana. The Skates had purchased the property (15 acres) some three years before for $18,000.00, and it was not occupied by anyone after April, 1964. Skates had insurance on the house and a barn through his friend, a Mr. Haake, but the insurance was removed from the house and all of it placed on the barn because the house was unoccupied. When Skates called Higgins and asked if he would insure an unoccupied house, Higgins said he would and suggested $6,000.00. Higgins sent an invoice for the premium and Skates paid it. The policy was issued, and later Skates asked for an endorsement showing the house was unoccupied. Preferred's policy and the endorsement were signed by J. E. Higgins as agent. Skates received a renewal notice on the policy of the same number as originally issued, and there was a second renewal notice received by Skates, he thought about the middle of February, 1966. On February 19, 1966, Skates issued his firm's check to Ashwood Insurance Agency for $22.00 which had on it the recital "policy No. 308165 on 7607 Indiana." The second renewal notice showed a premium of $24.00 and on February 28, 1966, Skates sent another check to Ashwood for $2.00 additional premium. After the house burned on March 13, Skates called Higgins the next day, "I said, 'You have a policy on my house at 7607 Indiana,' and he said, 'Yes.' I said, 'It burned and it was a total loss.' And he said he would take care of it." About a week later Higgins walked into Skates' office with a complete file and letters that had been written and explained that he did not represent Preferred and he was getting the policy through another agent who did not get it. From the time the policy was issued until the date of loss Skates never did have any direct communication with anybody, other than Higgins, who purported to represent Preferred.

Higgins had been a regional agent for Preferred since 1961 with authority to sign policies as agent. He had his contract with Preferred terminated on September 10, 1965, and thereafter had no authority to sign policies as its agent. When he sent the first and second renewal notices to Skates, he intended to place the insurance back with Preferred, and he deposited the two checks in the bank. About February 25, Higgins called Bill Smith of the William Smith Insurance Agency which represented Preferred and told him he would like to place it back in Preferred through his agency. Smith told him he would take care of it for him. Later Smith called and told Higgins he could not locate the house, and exact directions were given him. There were no further conversations between the two before the house burned. When Higgins told Smith of the loss, he said, " 'Jim, I am sorry, I didn't think the place was insurable and I didn't write the insurance.' " This was Higgins first knowledge that the house was not covered. Higgins then wrote Smith and sent him a check for the net premium, and the check was returned to Higgins by Smith.

Preferred says that the trial court erred in finding for Skates because it erroneously found that Higgins had apparent authority to bind Preferred to a renewal of the policy. With ramifications this is the principal issue between the parties. Preferred argues the general rules of agency, and specifically the lack of evidence to show the three prerequisites to a finding of "apparent authority" set out in Continental-St. Louis Corporation v. Ray Scharf Vending Co., Mo.App., 400 S.W.2d 467. That case involved a purported sale of a vending machine route in which defendant's president, Scharf, dealt with plaintiff's office manager, Saladino, who told him that he had authority to complete the deal. Saladino took Scharf's $12,000.00 down payment and disappeared and defendant sought to hold Saladino's employer on its counterclaim, which was upon the theory of apparent authority of the agent and was based upon Saladino's previous dealings with Scharf in selling some vending machine "stops." The court held that

there was a vast difference between the sale of an entire vending machine route and those which Saladino had previously handled, so as not to show the first prerequisite to apparent authority (see 400 S.W. 2d 470 [4, 5] that plaintiff manifested its consent to Saladino's acting for them with regard to the purchase of Automatics (entire) route which, it turned out, was not for sale. The court noted, citing 3 Am. Jur.2d, Agency, Section 75, p. 478, that "The appearance of authority in one respect does not extend to other acts which are not of a like nature", and said, 400 S. W.2d 471 [9], "In the second place the defendant's own evidence shows conclusively that Scharf knew that this was not a usual transaction or one which Saladino had authority to handle by virtue of his position with the plaintiff."

The distinguishing fact here from the situation in the Continental case relied upon by Preferred is that Higgins as ostensible agent for Preferred, in issuing his renewal notices, specifying the policy of insurance to be renewed, and in receiving and retaining the premium therefor, did acts of *exact like nature* to those he did at the inception of the policy period when he had actual authority to write and sign the policy. Higgins' apparent authority to bind Preferred causes to be applicable the authority and cases cited by Skates, called by them "the universal rule of law, * * * which holds the insurance company to acts of its former agent unless it notified its policyholders of the termination of the agency." The rule is stated in 43 Am.Jur.2nd, Insurance, Section 154, p. 210, "It is the duty of an insurance company to notify insured persons who have dealt with their agent as the representative of the company of the termination of his authority. If it fails to do so, it is bound by his acts if such a person continues to deal with him as the representative of the company, in ignorance of the termination of the agency. This rule is based on the general principle that the acts of an agent within the apparent scope of his authority are binding on the principal as against one who had formerly dealt with him through the agent and who had no notice of the revocation." See also Anno. 14 ALR 846; and where on analogous facts that the insured paid his premium to the agent from whom the policy was received, as had been the custom, having no knowledge that the agency had been terminated, the court in Southern L. Ins. Co. v. McCain, 96 U.S. 84, 86, 24 L.Ed. 653, said, "After it has appointed an agent in a particular business, parties dealing with him in that business have a right to rely upon the continuance of his authority, until in some way informed of its revocation." Besides the cases on the subject listed and discussed in the foregoing annotation, see the later cases of Western Millers Mutual Insurance Co. v. Williams (CA 5th) 231 F.2d 425, 428 [1–3]; Tucker v. American Aviation & General Ins. Co., 198 Tenn. 160, 278 S.W.2d 677, 679 [1]; and American Casualty Company v. Whitehead (Miss.Sup.) 206 So.2d 838, 843 [2]. What has been said disposes of Preferred's further argument that the renewal of Skates' insurance was not of "like or similar nature" to what Higgins had done previously under actual authority. Obviously also, the Skates did rely (to their detriment) upon Higgins' apparent authority in that they did not seek other insurance coverage.

There was an affidavit of Frank G. Altman, an insurance man of long standing, that it was not the custom of insurance companies to give notice to policyholders of the termination of agency contracts. There was no evidence that the Skates had any notice or knowledge of any such custom of companies as would be binding upon the Skates. See 21 Am.Jur. 2d, Customs and Usages, Section 5, p. 681; and Ellenburg v. Edward K. Love Realty Co., Mo., 332 Mo. 766, 59 S.W.2d 625, 630 [10, 11].

The judgment is affirmed.

WASSERSTROM, J., not participating.